# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No.  07-3353

_____

United States of America,            *
                                      *

       Plaintiff – Appellee,     *
                                        *

         v.                      *  Appeal from the United States
                                        *  District Court for the

Michael Edward Kowal,         *  Northern District of Iowa.
also known as Larry William Tipton, *
also known as Michael William Tipton, *
also known as William Bloom,    *
                                        *

      Defendant – Appellant.    *

_____

Submitted:  April 15, 2008
Filed:  May 29, 2008

_____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael Edward Kowal was charged in a seven count indictment with crimes related to identity theft.  He pled guilty to five of the counts and was found guilty after a bench trial on the remaining two counts, the district court[1] sentenced him to fifty

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

four months in prison.  Kowal appeals, challenging his conviction on the two counts of aggravated identity theft and his sentence on the other counts.  We affirm.

I.

Michael Edward Kowal was charged in Arizona state court in late 1988 on multiple counts of theft and forgery related to the embezzlement of funds from his employer.  While the charges were pending, Kowal assumed a new identity by obtaining a birth certificate under the name of Larry William Tipton, a person who was born in December 1944 and died at the age of five.[2]  Kowal then used that birth certificate to obtain an Arizona driver license, and with those two documents he applied for a social security number in Larry William Tipton's name and received a number ending in 0053.  Using the Tipton birth certificate, driver license, and social security number, Kowal applied for a United States passport on October 12, 1989 but was denied.

On November 21, 1989 Kowal was charged under the name Michael Kowal in a federal indictment in Arizona with making a false statement in connection with a passport application.  Kowal was aware of the investigation but was never arrested or arraigned on the charge.  He left Arizona for California in late 1989 to avoid prosecution on the 1988 state charges.  Those charges were dismissed in 1999, and the federal prosecution was dismissed in 2001.

Upon arriving in California Kowal searched for a new identity and applied for and received a birth certificate for William Clorindo Bloom, a person who was born in September 1944 and died at the age of four months.  Using the Bloom birth certificate Kowal obtained a California state identification card.  In early 1990 he obtained a social security number ending in 1447 in William Bloom's name, using the

_____

[2]Kowal was born in September 1944.

Bloom birth certificate and identification card, and in October 1995 he received a California driver license under Bloom's name. In early 1998 Kowal was charged as William Bloom in California state court with felony theft from his employer but was never arrested on that charge.

Kowal returned to Arizona in 2000 or 2001 and resumed living as Larry William Tipton. He began dating Marilyn Egli, and on March 18, 2003 he applied for an Iowa marriage license, using the name Larry William Tipton and the 0053 social security number (count 1 of the indictment). Kowal and Egli married on March 23, 2003 in Cedar Rapids, Iowa. On the marriage license Egli changed her last name to Egli-Tipton, and Kowal listed his name as "Michael William Tipton."

In Cedar Rapids in June 2004, Kowal applied for a replacement social security card for the 0053 account to change the name of the holder to Michael William Tipton (count 2) and then used that card to obtain an Iowa driver license in that name (count 3). In September of the same year Kowal obtained an Iowa real estate license in the name of Michael Tipton using the 0053 social security number (counts 4 and 5). Kowal was charged with knowingly and falsely representing to the Iowa Real Estate Commission that his name was "Michael Tipton," that his social security number was the number ending in 0053, and that he was born in December. In January 2005 he used the 0053 number to obtain a certificate of title to a vehicle (counts 6 and 7). To prove his identity he provided his Iowa marriage license, the replacement 0053 social security card, and his Iowa driver license, all in the name of Michael William Tipton. On the application for certificate of title he used the name of Michael William Tipton and the birthdate of Larry William Tipton.

Egli's family members uncovered Kowal's past in the spring of 2005, and she filed for an annulment on May 16, 2005. An Iowa state court issued the annulment on June 8, 2005 and changed Egli-Tipton's name back to Marilyn Egli. It took no action with respect to the name Kowal had listed on the license, Michael William

Tipton. In the middle of 2005 Kowal moved to the Chicago area and began living under the name Michael Edward Kowal.

During his time living under assumed identities, Kowal obtained seventeen credit cards from fourteen different companies, with fourteen of the cards in the Tipton name and three in the Bloom name. By June 2005 Kowal owed $28,480 on the cards. The total loss to the card issuers at that time, as calculated under United States Sentencing Guidelines (U.S.S.G.) § 2B1.1, was $17,934.82, excluding interest and fees (but including a mandatory $500 minimum loss required by U.S.S.G. § 2B1.1 cmt. n.3(F)(i) on any account with a balance of less than $500).

On October 19, 2006 Kowal was charged in the seven count indictment in this case. Counts 1, 3, 4, and 6 charged him with using a fraudulently obtained social security number in violation of 42 U.S.C. § 408(a)(7)(A). Count 2 charged him with making a false statement to the Social Security Commissioner in violation of 42 U.S.C. § 408(a)(6). Counts 5 and 7 charged him with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). On December 18, 2006 he filed a motion to continue trial on counts 5 and 7, and on December 22 he pled guilty to the other five counts of the indictment. Shortly thereafter Kowal waived his right to a jury trial on counts 5 and 7, and the district court found him guilty after a bench trial on both of these counts.

The district court held a sentencing hearing on September 6, 2007 and imposed sentence and entered judgment on October 5. Kowal's base offense level was set at 12 with a criminal history category of I. The district court added four levels under U.S.S.G. § 2B1.1(b)(1)(C) for loss associated with the 17 credit cards Kowal had fraudulently obtained and two levels under U.S.S.G. § 2B1.1(b)(2)(A)(i) for more than 10 victims (fourteen credit card companies). The court then departed upward two levels because his fraud was committed to avoid prosecution and because the calculated offense level substantially understated the seriousness of his offenses and

three additional levels for substantial nonmonetary harm to Egli and her family. The resulting advisory guideline range was 24 to 30 months, and the district court sentenced Kowal to 30 month concurrent terms on counts 1, 2, 3, 4, and 6. On counts 5 and 7, the district court imposed a 24 month mandatory sentence under § 1028A(a)(1), the two sentences to be served concurrently, but the sentence on count 5 to be consecutive to his 30 month term as mandated by 18 U.S.C. § 1028A(b)(2) (that on count 7 to be served concurrently as permitted by 18 U.S.C. § 1028A(b)(4)).

On his appeal Kowal argues that the statute under which he was charged for aggravated identity theft in counts 5 and 7 only applies to the theft of an identity of a living person. He contends that § 1028A(a)(1)'s proscription against the theft of the "means of identification of another person" does not include the identification of a deceased individual and that he is therefore not guilty of those counts. He also challenges his sentence on counts 1, 2, 3, 4, and 6, arguing that the district court misapplied the amount of loss rule in U.S.S.G. § 2B1.1 because he did not obtain the credit cards with an intent to defraud. He also claims that the upward departure for avoidance of prosecution in Arizona resulted in greater punishment than if he had been convicted of those charges, that the district court improperly increased his sentence because he had lied to his wife, and that his sentence is unreasonable.

## II.

Kowal first argues that his convictions on counts 5 and 7 for aggravated identity theft under 18 U.S.C. § 1028A(a)(1) must be vacated because the statute does not cover the theft of a deceased person's identity. We have already rejected this argument. In United States v. Mendoza-Gonzalez, 520 F.3d 912, 918 n.4 (8th Cir.), rehearing and rehearing en banc denied, No. 07-2660 (8th Cir. May 1, 2008), we concluded that the language used in § 1028A(a)(1) does not say that the stolen identity must be that of a living person and noted that Mendoza-Gonzalez had not supported his argument with any authority. Although Kowal argues the court's conclusion was

only dictum, it decided an issue on the appeal. <u>Mendoza-Gonzalez</u> is a viable precedent even if its reasoning on this issue was abbreviated.

Section 1028A(a)(1), the aggravated identity theft statute, states that

Whoever, during and in relation to any felony violation enumerated in subsection (c) [including 42 U.S.C. § 408], knowingly transfers, possesses, or uses, without lawful authority, <u>a means of identification of another person</u> shall, in addition to the punishment for such felony, be sentenced to a term of imprisonment of 2 years. (emphasis added).

In order to convict Kowal under that statute the government must prove that Kowal knowingly used the means of identification of another person without lawful authority during and in relation to an enumerated felony. <u>See</u> <u>United States v. Hines</u>, 472 F.3d 1038, 1039 (8th Cir. 2007). Kowal contends that the government cannot prove that he stole the identity of another "person" because the statutory term covers only a living person.

The first question in interpreting a statute is "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340 (1997). If so we apply the plain language of the statute. <u>E.g.</u>, <u>Doe v. Dep't of Veterans Affairs</u>, 519 F.3d 456, 461 (8th Cir. 2008). We look beyond the statute's text only if it is ambiguous. <u>See</u> <u>Staples v. United States</u>, 511 U.S. 600, 605 (1994).

As recognized by the First Circuit in <u>United States v. Jimenez</u>, 507 F.3d 13, 19 (1st Cir. 2007), and by the district court in this case, <u>United States v. Kowal</u>, 486 F. Supp. 2d 923, 931–32 (N.D. Iowa 2007), there are varying dictionary definitions of

"person."  Some pertain only to living persons while others are not so limited.[3]  In common usage, however, the adjectives "living" and "deceased" may both properly be used to narrow, that is to make more specific, the meaning of the noun "person." The word "person" thus encompasses both the living and the deceased, and each of such persons possesses an identity which is susceptible to misappropriation.  It is reasonable to assume that Congress considered it unnecessary to distinguish between theft of the identity of a deceased person as opposed to a living person because the word "person" is broad enough to cover both.

The context in which "person" is employed supports this conclusion.  General principles of statutory construction provide that we look to the structure of the statute and the language surrounding the term to ascertain its meaning.  When two statutory provisions employ the same word in close proximity, the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning" carries even greater weight.  Comm'r v. Lundy, 516 U.S. 235, 250 (1996).  Both 18 U.S.C. §§ 1028A(a)(1) and 1028A(a)(2) prohibit the use "without lawful authority, of a means of identification of another person," but § 1028A(a)(2) adds an additional phrase prohibiting the use of a "false identification document."  Section 1028A(a)(2) deals with identity theft related to acts of terrorism and imposes a mandatory five year sentence upon conviction.  Cf. § 1028A(a)(1) (two year mandatory sentence).  To interpret § 1028A(a)(2) to apply only to those terrorists who steal a living person's identity would be inconsistent with what otherwise appears to be an effort to achieve broad coverage, as evidenced by the statute's prohibition of false identification documents in addition to "means of identification of another person" and the congressional purpose to prevent aggravated identity theft, as well as the provision for more serious sentences for violations of this subsection.  See

_____

[3]For example, the American Heritage Dictionary's primary definition of "person" is "a living human."  American Heritage Dictionary 1310 (4th ed. 2000).  But Webster's primary definition, "an individual human being," is not limited to the living. Webster's New Third International Unabridged 1686 (1993).

<u>Jimenez</u>, 507 F.3d at 19–20.  Reading "person" in § 1028A(a)(2) to include a deceased person avoids the illogical result of limiting the scope of the terrorist provision, and the close proximity of the identical phrase in § 1028A(a)(1) leads to the conclusion that "person" has the same meaning in both subsections.  We conclude that the term "person" as used in § 1028A(a)(1) is not ambiguous.[4]

The legislative purpose in protecting individual identity by passage of the aggravated identity theft statute supports this interpretation.  An identity stolen from an actual person based on a real name, a real social security number, and a real birth date makes detection of the theft more difficult than if a perpetrator had fabricated a false identity.  An identity stolen from a deceased person, however, is far less likely to be uncovered than one stolen from a living person.  As the <u>Jimenez</u> court observed, § 1028A(a)(1) imposes a stiffer penalty on these types of identity thefts precisely because they are more difficult to uncover.  <u>See</u> 507 F.3d at 20.

Kowal also raises the rule of lenity which requires that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  <u>Cleveland v. United States</u>, 531 U.S. 12, 25 (2000).  That rule should not be invoked if any ambiguity can be resolved without it.  <u>Bernitt v. Martinez</u>, 432 F.3d 868, 869 (8th Cir. 2005) (per curiam).  Because the statutory structure and language resolve any ambiguity that the use of the term "person" might present, the rule of lenity is not implicated here.

---

[4]Section 1028A(b), entitled "Consecutive sentence," refers to "person" in its sentencing provisions, and Kowal asserts that that use of person means the statute does not include deceased persons.  This section does not limit the general use of "person" in § 1028A(a) because by its nature a sentencing provision can of course only apply to the living.

Kowal next challenges the sentence for his convictions on counts 1, 2, 3, 4, and 6. We review the sentence imposed for reasonableness, first ensuring that the district court "committed no significant procedural error." Gall v. United States, 128 S. Ct. 586, 597 (2007); see also United States v. Washington, 515 F.3d 861, 865 (8th Cir. 2008). If the district court's decision is "procedurally sound," we next review the sentence for substantive reasonableness under an abuse of discretion standard. Gall, 128 S. Ct. at 597; Washington, 515 F.3d at 865. On appellate review we may apply a presumption of reasonableness to a sentence within the properly calculated guidelines range but are not required to do so. Rita v. United States, 127 S. Ct. 2456, 2465 (2007); see Gall, 128 S. Ct. at 597. We review a sentencing court's findings of fact for clear error and its application of the advisory guidelines de novo. United States v. Flying By, 511 F.3d 773, 778 (8th Cir. 2007).

Kowal first argues that the district court misapplied the amount of loss rule under U.S.S.G.§ 2B1.1. By the time that Kowal's true identity was recognized, he had accrued $28,480 credit card debt on seventeen cards issued by fourteen different companies using the names of Tipton and Bloom. When calculating the guideline sentence under U.S.S.G. § 2B1.1, the district court determined that the loss attributable to the cards was $17,934.82. The court then applied a four level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) because the amount of loss was between $10,000 and $30,000, as well as a two level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) because there were more than ten victims.

Section 2B1.1(b)(1) of the advisory guidelines provides for incremental increases in the base offense level when the loss exceeds $5,000. Application Note 3(F)(1) to that section contains a rule for calculating losses associated with credit cards:"[i]n a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access

device or unauthorized access device and shall not be less than $500 per access device." The term "access device" includes credit cards, see 18 U.S.C. § 1029(e)(1), and an "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud," 18 U.S.C. § 1029(e)(3). Kowal contends that because he intended to pay the card balances, he did not obtain the cards with an "intent to defraud" and therefore the cards were not unauthorized access devices associated with a loss upon which an enhancement under U.S.S.G. § 2B1.1 can be based.

Kowal admits that he intended to deceive the credit card issuers into believing that he was the individual named on the cards issued to him, but argues that the Supreme Court has drawn a distinction between intent to deceive and intent to defraud in other contexts. See United States v. Yermian, 468 U.S. 63, 73 n.12 (1984) ("'Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit.'"), quoting United States v. Godwin, 566 F.2d 975, 976 (5th Cir. 1978). The question here is whether the district court clearly erred in finding that Kowal's admitted intent to deceive rose to the level of intent to defraud when he obtained the credit cards.

Kowal obtained credit cards from numerous issuers by purporting to be another individual. The credit card issuers had no knowledge of his true identity and did not consent to issue cards to "Michael Edward Kowal." The fact that he purportedly intended to pay off the balances and that he made payments on the cards is irrelevant. His representations to the issuers that they were dealing with a different person strongly suggests intent to defraud. See United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005). We agree with the district court that Kowal's assertion that he would have paid off the card balances was a "self-serving invitation" to limit the losses for which he should be held accountable. There is also no evidence that Kowal attempted restitution after his real identity was discovered, which might have

supported his claim that his intent in obtaining the cards was mere deceit. Cf. United States v. Oligmueller, 198 F.3d 669, 671 (8th Cir. 1999) (intended loss was zero when defendant repaid lender after his fraud was discovered). The district court's determination that Kowal obtained the numerous credit cards with the intent to defraud the issuers is not clearly erroneous. We therefore affirm the four level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) and the two level enhancement for more than ten victims under U.S.S.G. § 2B1.1(b)(2)(A)(i).

Kowal next challenges the district court's decision to depart upward. Kowal contends that the district court improperly applied a three level upward departure for substantial nonpecuniary harm based on emotional and psychological harm to Egli and her family pursuant to U.S.S.G. § 2B1.1, Application Note 20(A)(ii). The district court heard testimony from Egli and her daughter regarding the substantial emotional and psychological toll that Kowal's deceit and misrepresentations had taken on their family and particularly on Egli's grandchildren and found the testimony to be "highly credible." Kowal also contests the district court's two level upward departure pursuant to U.S.S.G. § 2B1.1, Application Note 20(A)(i). This guideline permits an upward departure if"[a] primary objective of the offense was an aggravating, non-monetary objective." The district court found that Kowal's primary objective in assuming new identities was to avoid criminal prosecutions in Arizona and California and that his base offense level "substantially understate[d]" the seriousness of his offenses. On these grounds it departed upward two levels. We conclude that the record supports the district court's upward departures.

Finally, Kowal argues that his sentence is unreasonable. We review the substantive reasonableness of a sentence under an abuse of discretion standard. Gall, 128 S. Ct. at 597. A sentence imposed under 18 U.S.C. § 3553(a) is reviewed for reasonableness even when it falls within the advisory guideline range. United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007). A sentencing court abuses its discretion under § 3553(a) if "it fails to consider a relevant factor that should have

received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." Id. The post departure guideline range was 24 to 30 months, and the district court imposed a sentence at the top of that range. In reaching this sentence the district court considered all of the § 3553(a) factors. The resulting sentence accounted for the seriousness and breadth of Kowal's offenses. We conclude that its decision to sentence Kowal to thirty months for his convictions on counts 1, 2, 3, 4, and 6 was a reasonable application of the § 3553(a) factors. See United States v. Boss, 493 F.3d 986, 987–88 (8th Cir. 2007).

IV.

Accordingly, we affirm the judgment of the district court.

_____