In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2344

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANNA LAFAIVE, also known as PHYLLIS CLICK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:07-cr-62—**Theresa L. Springmann**, *Judge.*

ARGUED FEBRUARY 18, 2010—DECIDED AUGUST 18, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE and
ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge.* Anna LaFaive assumed the
identity of her deceased sister, opened checking ac-
counts in her name using counterfeited checks, and
withdrew nearly $65,000 before being apprehended. A
jury convicted her of two counts of bank fraud and two
counts of aggravated identity theft. On appeal, LaFaive
challenges her conviction under 18 U.S.C. § 1028A for

aggravated identity theft and takes issue with the procedure used by the district court in calculating her sentence. We affirm both her conviction and sentence.

## I. BACKGROUND

Although largely irrelevant to the legal issues LaFaive raises in this appeal, some background information may be useful. Phyllis Jean Click, LaFaive's older sister, was born in 1946. She died of cancer in 1990 at the age of 45. LaFaive was born in 1961. In May 2007, LaFaive used a counterfeit check in the amount of $48,039.16 to open a new checking account in Click's name at Star Financial Bank in Fort Wayne, Indiana. The check was drawn on an account at JP Morgan Chase Bank. LaFaive presented the bank with a social security number verification document and an Indiana identification card, both identifying her (LaFaive) as Phyllis J. Click. Using the same documents, LaFaive opened another checking account in Click's name at Fifth Third Bank in Fort Wayne, Indiana, this time with a counterfeit check in the amount of $68,920.78. The next month, LaFaive made purchases totaling nearly $5,000 at a GameStop and Best Buy from these new checking accounts. She also withdrew $60,000 in cash from a Fifth Third Bank in Ohio. Authorities eventually found LaFaive living in Harper Woods, Michigan, where she was arrested in late June 2007.

LaFaive was indicted on two counts of bank fraud in violation of 18 U.S.C. § 1344, two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A, and a

forfeiture allegation under 18 U.S.C. § 982. At trial, LaFaive's defense was that her sister was still alive, had deposited the counterfeit checks herself, and framed LaFaive for the crimes. The jury found this theory unbelievable and convicted her of all four counts and awarded forfeiture in the amount of $64,863.04. The district court sentenced LaFaive to an above-guidelines sentence of 70 months' imprisonment—46 months on the bank fraud counts and the mandatory 24 consecutive months on the aggravated identify theft counts. After the district court denied LaFaive's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, LaFaive filed this appeal.

## II. ANALYSIS

LaFaive argues that she cannot be convicted of aggravated identity theft under § 1028A because that statute does not criminalize the use of a deceased person's identity. She also argues that the district court improperly considered the factors in 18 U.S.C. § 3553(a) to enhance her sentence before adding the mandatory 24-month consecutive sentence under § 1028A(a)(1) to the total guideline calculation. We consider each argument in turn.

### A.  Scope of 18 U.S.C. § 1028A

LaFaive argues that § 1028A criminalizes only the use of a living person's identity, and therefore her use of her deceased sister's identity falls outside the scope of the

statute. Because she did not raise this argument before the district court, we will reverse her conviction only for plain error, which requires a clear or obvious error by the district court that affects the defendant's substantial rights "and seriously impugn[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010). If LaFaive's interpretation of § 1028A is correct, she would almost certainly be entitled to the relief she requests. *See United States v. Groves*, 470 F.3d 311, 327-28 (7th Cir. 2006) (reversing a conviction "[b]ecause allowing a conviction to stand without proof of an essential element of the crime meets the standard for plain error . . .").

### 1. Plain Text of § 1028A(a)(1)

Although this is a question of first impression for our court, we are not starting from scratch—every federal court to consider this issue has concluded that § 1028A criminalizes the use of both a living or deceased person's identification. While we are not bound by these decisions, we find their reasoning persuasive and reach the same conclusion for largely similar reasons.

Section 1028A(a) provides:

> (1) In general.—Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punish-

ment provided for such felony, be sentenced to a term of imprisonment of 2 years.

(2) Terrorism offense.—Whoever, during and in relation to any felony violation enumerated in section 2332b(g)(5)(B), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.

This case revolves around the meaning of the phrase "another person" in subsection (a)(1). We begin our interpretation of a statute with the plain language of the statute. *United States v. Ye*, 588 F.3d 411, 414-15 (7th Cir. 2009). We may refer to "'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711 (7th Cir. 2005) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). We only consider the legislative history if the statute contains an ambiguity that the text or structure of the statute cannot resolve. *DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1008 (7th Cir. 2010). If, after considering all of that, the statute's meaning still escapes us, we will apply the rule of lenity and give the defendant the benefit of our doubt. *See United States v. Resnick*, 594 F.3d 562, 570 (7th Cir. 2010).

Section 1028A does not define "person," so we will assume Congress intended it to have its ordinary meaning. *See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 233 F.3d 981, 989 (7th Cir. 2000).

Although dictionaries can at times be helpful to determine the ordinary meaning of words, resort to dictionaries here is inconclusive—some definitions limit a "person" to a living being, while other definitions are not so limiting. *See United States v. Maciel-Alcala*, No. 09-50038, 2010 WL 2836992, at *3 (9th Cir. July 21, 2010) (collecting definitions); *United States v. Kowal*, 527 F.3d 741, 746 (8th Cir. 2008) (same); *United States v. Jimenez*, 507 F.3d 13, 19 (1st Cir. 2007) (same). As can be expected, LaFaive prefers the definitions that use the word living, while the government is a little more candid about the lack of consensus among dictionary editors. Because "[t]he word 'person' in isolation admits of more than one meaning," *Jimenez*, 507 F.3d at 19, we examine the word as it is used in context, *see Commodity Trend Serv.*, 233 F.3d at 989 ("'The existence of alternative dictionary definitions of' a word, 'each making some sense under the statute, itself indicates that the statute is open to interpretation' and the word is ambiguous as between the two meanings." *(quoting Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418 (1992))).

LaFaive asks us to conclude that because Congress did not specifically mention deceased persons under the statute, the phrase "another person" should be limited to living persons. But also missing from the statute is specific mention of living persons. The Eighth Circuit concluded that "common usage" of the word "person" accounted for the absence of limiting adjectives in the statute:

> [T]he adjectives "living" and "deceased" may both properly be used to narrow, that is to make more

specific, the meaning of the noun "person." The word "person" thus encompasses both the living and the deceased, and each of such persons possesses an identity which is susceptible to misappropriation. It is reasonable to assume that Congress considered it unnecessary to distinguish between theft of the identity of a deceased person as opposed to a living person because the word "person" is broad enough to cover both.

*Kowal*, 527 F.3d at 746; *see also Maciel-Alcala*, 2010 WL 2836992, at *6 ("[B]ecause the means of identification of deceased persons can be stolen and used unlawfully, had Congress used the phrase 'living or deceased' in § 1028A(a)(1), it would have been surplusage.").

We agree that the common usage of the word "person" includes both living and deceased individuals. Because there is nothing in § 1028A(a)(1) that would naturally limit the definition of "person" to just the living, *cf. Maciel-Alcala*, 2010 WL 2836992, at *6 (noting that the use of "person" in § 1028A(b) is limited to living persons, not because of the definition of the word "person," but because the rest of the language of that provision logically limits its application to living persons), we conclude that the provision's prohibition on using the identification of "another person" includes the identification of both living and deceased persons.

### 2. *Structure of* § *1028A*

Moreover, we find that the structure of the statute as a whole supports our conclusion. Absent evidence of

Congress's intent to the contrary, we assume that Congress intended the same words used close together in a statute to have the same meaning. *Arnett v. C.I.R.*, 473 F.3d 790, 798 (7th Cir. 2007). Both subsections (a)(1) and (2) prohibit the use "without lawful authority [of] a means of identification of another person . . . ." Subsection (a)(2), which applies to aggravated identity theft related to terrorism, also prohibits the use of a false identification document and carries a substantially stiffer penalty for violators. If "another person" in subsection (a)(2) was limited to living persons, the statute would prohibit the use of a deceased person's social security card but not the oral use of that same deceased person's social security number. Considering the broad coverage that Congress was trying to achieve in enacting subsection (a)(2)— as evidenced by the imposition of a stricter penalty and the addition of the prohibition against the use of false documents—we agree with the other circuits that have concluded that limiting "person" in subsection (a)(2) to a living person works an "illogical," "absurd," and "nonsensical" result. *See Maciel-Alcala*, 2010 WL 2836992, at *6; *Kowal*, 527 F.3d at 747; *Jimenez*, 507 F.3d at 20. Because the word "person" in subsection (a)(2) must include living and deceased persons, the word "person" in subsection (a)(1) must also include living and deceased persons.

Nothing in the Supreme Court's decision in *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), counsels toward a different reading of § 1028A. The question in *Flores-Figueroa* was whether the word "knowingly" modified all or just part of the sentence that followed,

including the phrase "of another person." *Id.* at 1888-89. The Court held that the government must "show that the defendant knew that the means of identification at issue belonged to another person." *Id.* at 1894. To reach that conclusion, the Court rejected the government's argument that applying the knowing requirement to "another person" in subsection (a)(2) was unnecessary because the defendant would know that he was either using the means of identification that belonged to another person or that it was a false document. *Id.* at 1892. The Court found that because a defendant could also orally use "a made-up Social Security number, not an 'identification *document*,' and the number verbally transmitted . . . might, or might not, turn out to belong to another person[, t]he word 'knowingly' applied to the 'other person' requirement . . . would not be surplus." *Id.* The Court did not address, either explicitly or implicitly, the scope of the phrase "another person" in § 1028A.

LaFaive would have us extrapolate from the discussion in *Flores-Figueroa* that the Supreme Court identified and found nothing wrong with the gap in coverage in subsection (a)(2) that we found supports our natural reading of "person." But LaFaive is trying to coax too much out of the Court's opinion. The Court simply found that the statute required the government to show that the defendant knew that she was using the identification of an actual person, as opposed to a fictitious one. It identified the same gap in coverage that we have in order to show that the knowledge requirement should modify the entire provision and not just part. This falls far short of the Court finding that the statute

did not cover the oral use of a social security number—something the Court did not actually decide (or even suggest). We also note that we are not the only court to decide post-*Flores-Figueroa* that § 1028A covers the use of the identity of both living and deceased persons. *See Maciel-Alcala*, 2010 WL 2836992, at *6; *United States v. Parks*, Nos. H-06-226, H-09-1586, 2010 WL 1994186, at *7 n.5 (S.D. Tex. May 17, 2010); *United States v. Davis*, No. 8:09-CR-0047, 2009 WL 1476459, at *3 n.5 (N.D.N.Y. May 27, 2009).

LaFaive's remaining arguments are without merit, in large part because they ignore two important facts. First, a deceased person has an identity that is subject to misappropriation, and the use of a deceased person's identity makes detection of the theft particularly difficult. See *Maciel-Alcala*, 2010 WL 2836992, at *7; *Kowal*, 527 F.3d at 747; *Jimenez*, 507 F.3d at 20 n.8. Second, the statute does not purport to create a cause of action in the individual whose identity was misused. 18 U.S.C. § 1028A(a)(1); *see also United States v. Shain*, No. CR08-0112, 2008 WL 2940641, at *3 (W.D. Wash. July 24, 2008). Therefore, we are not bothered by the fact that the theft of a deceased person's identity does not fit neatly within traditional or modern legal definitions of theft, which would require a living victim. Nor do we find dispositive the fact that Congress termed a violation of § 1028A an "aggravated theft." Congress's purpose in enacting the statute was not only to prevent harm to living victims, but also to "protect businesses from financial loss and the nation from terrorist threats." *Maciel-Alcala*, 2010 WL 2836992, at *7. Moreover, theft of a de-

ceased person's identification is not a "victimless crime." *Id.* at *8. As noted earlier, the plain language of § 1028A shows that Congress intended the statute to have broad coverage, and our conclusion that "person" includes both the living and deceased comports with that intention.

We are also unpersuaded that because some states have drafted identity theft statutes that explicitly mention deceased individuals, we should not read deceased persons into the definition of "person" in § 1028A. That Congress could have drafted the statute differently does not negate the plain meaning of the statute as enacted. And we note that at least one state has found that its own statute, which like § 1028A(a)(1) contained no explicit limitation on the word "person," applied to both living and deceased victims of identity theft. *See State v. Hardesty*, 213 P.3d 745, 749 (Kan. Ct. App. 2009) (statute has since been amended).

Because we find that the statute's meaning is unambiguous, we decline to wade into the legislative history. For the same reason, we find the rule of lenity inapplicable to this case. *United States v. Rosenbohm*, 564 F.3d 820, 826 (7th Cir. 2009) ("The rule [of lenity] applies . . . only when the statute is, in fact, ambiguous.").

The district court did not plainly err. Accordingly, we affirm LaFaive's conviction.

## B. Sentencing Procedure

LaFaive also argues that her sentence should be vacated because the district court improperly decided to

depart upward *before* adding the mandatory 24-month consecutive sentence to the total guidelines calculation. We again will reverse only for plain error.

After reviewing the transcript of the sentencing hearing below, we conclude that the district court did not commit any errors that warrant vacating LaFaive's sentence. After dispensing with various motions by both parties, the district court properly calculated the applicable guidelines range. The court calculated the range on the bank fraud counts as 24 to 30 months, and noted that there was a mandatory 24-month consecutive sentence for the aggravated identity theft counts. Although the district court did not say at that point that the final applicable range was 48 to 54 months, we do not think the failure to do so constitutes plain error. And in electing to depart upward from the 24- to 30-month range, the district court made it abundantly clear that it was doing so based almost entirely on the fact that LaFaive's criminal history score underrepresented the seriousness of her criminal background. Such a departure was appropriate under U.S.S.G. § 4A1.3 prior to adding the mandatory 24-month consecutive sentence.

Even if the court used the wrong procedure in deciding to depart from the recommended guidelines range, the error did not prejudice LaFaive. Her argument that the district court would not have sentenced her to such a high sentence had the court followed the proper procedure finds no support in the record. In fact, the record reveals that the district court clearly understood that

it had to add a two-year sentence to the end of whatever it deemed to be the appropriate sentence on the bank fraud accounts. Under these circumstances, we think it would be futile to remand to the district court simply so that the court could impose the same sentence. *Cf. United States v. Avila*, 557 F.3d 809, 819 (7th Cir. 2009) (declining to remand for resentencing in part because "[n]othing in the sentencing hearing suggests that had the judge refused to admit the improper evidence, he would have imposed a different sentence").

### III. CONCLUSION

18 U.S.C. § 1028A(a)(1) criminalizes the misuse of another person's identity, whether that other person is living or deceased. The district court, therefore, did not plainly err in entering the jury's conviction of LaFaive for violating that statute. The district court also did not plainly err in calculating or imposing LaFaive's sentence. Accordingly, we AFFIRM LaFaive's conviction and sentence.