**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4125

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

LESTER DEAN GEORGE,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:18-cr-00133-BO-1)

Argued: October 31, 2019                    Decided: January 9, 2020

Before KEENAN, FLOYD, and RICHARDSON, Circuit Judges.

Vacated and remanded by published opinion. Judge Floyd wrote the opinion in which Judge Keenan joined in full and in which Judge Richardson joined in all except Part II.D.

**ARGUED:** Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Paul K. Sun, Jr., ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Gabriel J. Diaz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellee.

FLOYD, Circuit Judge:

The case before us presents a question of first impression for this Court: whether the term, "another person," in the federal aggravated identity theft statute includes deceased, in addition to living, victims of identity theft. 18 U.S.C. § 1028A(a)(1). The district court below held that it does not. Therefore, the court allowed the defendant, Lester Dean George, to withdraw his guilty plea to the count of aggravated identity theft and dismissed that count. The Government appealed. For the following reasons, we vacate the district court's judgment and remand for resentencing.

I.

George, a citizen of Trinidad and Tobago, entered the United States on a temporary visa that permitted him to stay until 1987.[1] George overstayed his visa and unlawfully remained in the United States. On May 17, 2013, George used the means of identification of a deceased victim ("Victim") in connection with purchasing a residence in North Carolina. In particular, he used the Victim's name, date of birth, and social security number in an attempt to secure a home loan insured by the United States Department of Housing and Urban Development.

On April 19, 2018, George was charged in a two-count indictment with: false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

---

[1] These facts are taken from George's change-of-plea hearing in which he pleaded guilty to all counts.

2

On September 11, 2018, George pleaded guilty to both counts, without a plea agreement.

On December 17, 2018, George moved to withdraw his guilty plea as to the aggravated identity theft count on the basis that the district court had previously ruled that a defendant could not be convicted of aggravated identity theft if the victim whose identity was stolen was already deceased.

On January 18, 2019, at George's sentencing hearing, the district court granted his motion to withdraw his guilty plea as to the aggravated identity theft count and dismissed the count. On the remaining false representation of a social security number count, George was sentenced to time served.

The Government timely appealed, arguing that the district court erred in allowing George to withdraw his guilty plea and dismissing the aggravated identity theft count.

## II.

The question presented here is whether the term "person" in the aggravated identity offense provision at issue, 18 U.S.C. § 1028A(a)(1), includes deceased persons. As it is a matter of statutory interpretation, this Court conducts a de novo review. *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 489 (4th Cir. 2014).

## A.

When interpreting a statute, courts must "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v.*

3

*Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009)).  As a result, "[a]bsent ambiguity or a clearly expressed legislative intent to the contrary," *id.* (quoting *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993)), we apply the plain meaning of the statute, which is "determined by reference to its words' 'ordinary meaning at the time of the statute's enactment,'" *id.*  (quoting *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001)).

Beyond the general tools of statutory interpretation, "special considerations govern[] the interpretation of criminal statutes."  *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012).  Criminal statutes are "strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed."  *Id.* (internal quotation marks omitted) (quoting *United States v. Childress*, 104 F.3d 47, 51–52 (4th Cir. 1996)).  This is referred to as the "rule of lenity," a rule of statutory construction, that provides that when ambiguity is present in criminal statues, that ambiguity "must be resolved in favor of lenity for the accused."  *United States v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993) (quoting *United States v. Headspeth*, 852 F.2d 753, 759 (4th Cir. 1988)).  The rule is not triggered, however, by the "simple existence of some statutory ambiguity" given that "most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998); *accord Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, 'after seizing everything from which aid can be derived,' we can make 'no more than a guess as to what Congress intended.'" (citations omitted)).

4

Finally, before turning to the statute itself, it is worth noting that every other Circuit to consider the issue presently before us has held that the term "person" in subsection 1028A(a)(1) includes deceased persons. *See United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1225 (11th Cir. 2012); *United States v. LaFaive*, 618 F.3d 613, 616–18 (7th Cir. 2010); *United States v. Maciel-Alcala*, 612 F.3d 1092, 1100 (9th Cir. 2010); *United States v. Kowal*, 527 F.3d 741, 746–47 (8th Cir. 2008); *United States v. Jimenez*, 507 F.3d 13, 22 (1st Cir. 2007).

## B.

Section 1028A provides, in relevant part: "Whoever, during and in relation to any felony violation enumerated in subsection (c),[2] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1).[3] We are tasked with determining whether the phrase "means of identification of another *person*," as used in subsection 1028A(a)(1), encompasses the unauthorized use of the identification of a deceased person. *Id.* (emphasis added).

---

[2] Subsection (c) enumerates various federal criminal statutes, including 42 U.S.C. § 408(a)(7)(B) (misuse of a social security number). *See* 18 U.S.C. § 1028A(c)(11).

[3] "Means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *Id.* § 1028(d)(7).

5

Given that the term "person" is not defined by the statute, we first start by examining the word's ordinary meaning. *See FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011) ("When a statute does not define a term, we typically 'give the phrase its ordinary meaning.'") (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). To glean a word's ordinary meaning, courts often look to dictionaries for illumination and guidance. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012). Here, however, dictionaries are inconclusive as to the meaning of the term "person," because "some [dictionary] definitions limit a 'person' to a living being, while other definitions are not so limiting." *LaFaive*, 618 F.3d at 616; *see also Jimenez*, 507 F.3d at 19.

Although dictionaries are inconclusive, the use of "person" in common parlance is illustrative of its ordinary meaning. The word "person" is generally used to refer to both the living and the dead. That is why, after all, the adjectives of "living" or "deceased" are added to the word; the adjective modifies and narrows the general noun. *See Kowal*, 527 F.3d at 746 ("[T]he adjectives 'living' and 'deceased' may both properly be used to narrow, that is to make more specific, the meaning of the noun 'person.'") Thus, as the Government points out, the question of whether the word "person" includes a "deceased person," in effect, answers itself. In light of the ordinary meaning of the word "person," "[i]t is reasonable to assume that Congress considered it unnecessary to distinguish between theft of the identity of a deceased person as opposed to a living person because the word 'person' is broad enough to cover both." *Id.*; *accord Maciel-Alcala*, 612 F.3d at 1099 ("[H]ad Congress used the phrase 'living or deceased' in § 1028A(a)(1), it would have been surplusage.").

6

Despite the above, George points to the fact that some state legislatures, such as North Carolina, have used the adjectives of "deceased" or "dead" to modify the term "person" in state legislation; George argues, therefore, that the plain meaning of "person" does not necessarily encompass deceased persons. How some state legislatures have chosen to draft state legislation, however, is of little help in assessing how a term has been used by Congress; the fact that "Congress could have drafted the statute differently does not negate the plain meaning of the statute as enacted." *LaFaive*, 618 F.3d at 618.

Moreover, George's reliance on this Court's decision in *Hilton* is misplaced. The plain reading of "person" to include deceased persons is in contradistinction to the interpretive task this Court faced in *Hilton*. *See* 701 F.3d at 966–69. In *Hilton*, this Court addressed whether the same statutory provision encompassed corporate victims of identity theft. The Court observed that "Congress drafted the identity theft statutes by using the term 'person,'" which the Dictionary Act defines as including corporations, "but also by using the word 'individual,' which may or may not include corporations." *Hilton*, 701 F.3d at 967; *see also id.* (noting that the Dictionary Act treats the word "individual" as a subset of "person"). Due to the ambiguity and interpretive disconnect between the term "person" and "individual," the Court applied the rule of lenity and held that the aggravated identity theft statute therefore did not apply to the unauthorized use of means of identification of a corporation. *Id.* at 968–69 (holding that "nothing in the text, structure, articulated purpose, or legislative history of the identity theft statutes compels the conclusion that Congress intended to make the theft of a corporation's identity a crime" (footnote omitted)).

7

Thus, based on the ordinary meaning of the term "person," subsection 1028A(a)(1)'s prohibition on using the identification of another "person" includes both living and deceased victims.

## C.

The plain meaning of the term "person" as including deceased persons in subsection 1028A(a)(1) is strengthened when that provision is read in the context of its neighboring subsection, (a)(2). *See* 18 U.S.C. § 1028A(a)(1)–(2); *see also United States v. Johnson*, 915 F.3d 223, 229 (4th Cir. 2019) ("[W]e 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" (quoting *Torres v. Lynch*, 136 S. Ct. 1619, 1626 (2016)).

Subsection 1028A(a)(2) provides an enhanced penalty (a mandatory term of imprisonment of five, as opposed to two, years) for identity theft connected to acts of terrorism. 18 U.S.C. § 1028A(a)(2). In addition to prohibiting the unlawful transfer, possession, or use of the "means of identification of another person," the subsection also prohibits the unlawful transfer, possession, or use of a "false identification document." *Id.* Nothing in the statute limits the phrase "false identification document" to documents of living persons. As a result, as our sister Circuits have pointed out, construing "means of identification of another person" to exclude deceased persons would lead to the "nonsensical result" that subsection (a)(2) "would prohibit the use of a deceased person's social security card but not the oral use of that same deceased person's social security number" in connection with acts of terrorism. *LaFaive*, 618 F.3d at 617; *Maciel-Alcala*,

8

612 F.3d at 1099. Consequently, as the word "person" in subsection (a)(2) must logically include living and deceased persons, the word "person" in subsection (a)(1) must also include living and deceased persons. *LaFaive*, 618 F.3d at 617; *Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996) ("The interrelationship and close proximity of [two statutory provisions] presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks omitted)) (quoting *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990)).

In light of its plain, ordinary meaning and the statutory context, the term "person" is unambiguous and includes deceased persons as victims of identity theft. Given the term is unambiguous, the rule of lenity is "not implicated here." *Kowal*, 527 F.3d at 747; *accord Jimenez*, 507 F.3d at 22; *LaFaive*, 613 F.3d at 618; *Maciel-Acala*, 612 F.3d at 1102; *Zuniga-Arteaga*, 681 F.3d at 1226.

D.

The above conclusion would generally be the end of the road as to this Court's interpretive inquiry given we do not look to "other indicia of congressional intent such as the legislative history" to interpret an unambiguous term. *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (quoting *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 53 (4th Cir. 2011)). Nevertheless, peeking behind the curtain to view the relevant legislative history further bolsters our interpretation, and so we briefly discuss it.

9

During a hearing on the Identity Theft Penalty Enhancement Act (ITPEA), Pub. L. No. 108-275, 118 Stat. 831 (2004), Representative Adam Schiff, one of the Bill's co-sponsors, stated:[4]

> In section A where the offenses are defined, it refers to a means of identification of another person. I take it by the choice of that language that these enhancements apply when the fraudulent identification is that of another existing person, *either live or deceased*, but an actual individual, so in the case of a garden-variety immigration case where somebody fabricates an identity card out of whole cloth, not referring to any other person but merely invents a persona, that that would not be included within the sweep of this.

*Identity Theft Penalty Enhancement Act, and the Identity Theft Investigation and Prosecution Act of 2003: Hearing on H.R. 1731 and H.R. 3693 Before the Subcomm. on Crime, Terrorism, and Homeland Sec. of the H. Comm. on the Judiciary*, 108th Cong. 32 (2004) (statement of Rep. Schiff, Member, H. Comm. on the Judiciary) (emphasis added).

In addition, in passing the ITPEA and providing for increased penalties for identity theft, the legislative history indicates that Congress was frustrated that "many identity thieves receive short terms of imprisonment or probation." H.R. Rep. No. 108–528, at 3 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 780. The House Judiciary Committee Report accompanying the Act repeatedly emphasized Congress's intent to target and punish "identity thieves" who "steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes." *Id.* Moreover, one of Congress's purposes

---

[4] Although it is true that "statements of one legislator made during debate may not be controlling" in ascertaining Congress's intent, *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 526 (1982), "Representative Schiff's remarks, as those of the Bill's cosponsor, are 'clearly probative of a legislative judgment' and are therefore 'entitled to weight,'" *Maciel-Alcala*, 612 F.3d at 1100 (quoting *Simpson v. United States*, 435 U.S. 6, 13 (1978)).

was to "protect businesses from financial loss." *Maciel-Alcala,* 612 F.3d at 1100. Congress's purpose, as illuminated by the legislative history, is furthered by the interpretation of "person" to include deceased persons. As the Eighth Circuit noted in *Kowal*, "[a]n identity stolen from an actual person based on a real name, a real social security number, and a real birth date makes detection of the theft more difficult than if a perpetrator had fabricated a false identity." 527 F.3d at 747. "An identity stolen from a deceased person, however, is far less likely to be uncovered than one stolen from a living person." *Id.*

Moreover, the theft of a deceased person's identity is not a "victimless crime"; that is because, in addition to exposing businesses to potential financial losses, a "decedent's estate remains vulnerable to claims before it is closed" and identity theft "can therefore endanger the decedent's legacy and bequests. Moreover, the identities of friends and family of the deceased may be more easily accessed by potential thieves." *Maciel-Alcala*, 612 F.3d at 1101–02. As a result, the potential harm caused to the community and the individual whose identity is stolen is similar regardless of whether the victim is living or deceased.

Thus, though not necessary for our conclusion, the legislative history further bolsters our interpretation.

III.

For the foregoing reasons, we conclude that subsection 1028A(a)(1) prohibits the unauthorized use of the means of identification of deceased, as well as living, victims.

11

Accordingly, we vacate the district court's judgment allowing George to withdraw his guilty plea and dismissing the aggravated identity theft count, and remand for resentencing.

*VACATED AND REMANDED*