**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1094

In re: ELI LILLY AND COMPANY; ELI LILLY ITALIA S.P.A.; ELI LILLY KINSALE LIMITED; ELI LILLY GES.M.B.H.; ELI LILLY NEDERLAND B.V.

-------------------------------------------------

ELI LILLY AND COMPANY; ELI LILLY ITALIA S.P.A.; ELI LILLY KINSALE LIMITED; ELI LILLY GES.M.B.H.; ELI LILLY NEDERLAND B.V.,

              Movants - Appellants,

        v.

NOVARTIS PHARMA AG,

              Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:21-mc-00017-TSE-IDD)

Argued:  May 4, 2022                                    Decided:  June 16, 2022

Before NIEMEYER and DIAZ, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Diaz and Senior Judge Floyd joined.

**ARGUED:**  Katherine Ann Helm, DECHERT, LLP, New York, New York, for Appellants.  William M. Jay, GOODWIN PROCTER, LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Christina Guerola Sarchio, DECHERT LLP, Washington, D.C.,

for Appellants.  Jordan Bock, GOODWIN PROCTER LLP, Boston, Massachusetts, for Appellee.

_____

NIEMEYER, Circuit Judge:

Eli Lilly and Company and its foreign subsidiaries (collectively, "Eli Lilly") applied to the district court under 28 U.S.C § 1782 for an order requiring Novartis Pharma AG to provide discovery for use in ongoing patent litigation between the two companies in various European countries. Section 1782(a) authorizes a district court, in its discretion, to order a person who "resides or is found" in its district to provide discovery for use in a foreign tribunal.

After Novartis intervened and objected to Eli Lilly's application, the district court entered an order denying the application, concluding (1) that Novartis was not "found" in the Eastern District of Virginia because it lacked a physical presence there; (2) that, assuming "found" was coextensive with the constitutional limits of personal jurisdiction, as Eli Lilly argued, Novartis was still not "found" in the district; and (3) that, in any event, discretionary factors identified by the Supreme Court weighed against granting Eli Lilly's application in the circumstances of this case.

On Eli Lilly's appeal challenging each ground given by the court, we affirm the district court's order based on the first and third grounds and therefore find it unnecessary to address the second.

I

Eli Lilly is an international pharmaceutical company based in Indiana, and Novartis is an international pharmaceutical company based in Switzerland. Both companies produce anti-psoriasis drugs that rely on "a monoclonal antibody that targets and binds [the

3

relevant protein]," and both companies have patents or pending patent applications relating to their drugs. As for Novartis, it purchased a patent portfolio from Genentech, Inc. in 2020 that included, among others, two relevant European patents and three relevant U.S. patent applications.

After acquiring the patent portfolio, Novartis filed patent-infringement actions against Eli Lilly in several European countries, including Germany, Ireland, Italy, Austria, and Switzerland. In response, Eli Lilly not only challenged the validity of at least one of Novartis's European patents (including by initiating a separate action against Novartis in the Netherlands), but it also contended that Novartis was engaging in anticompetitive conduct by abusing a "dominant position in a relevant European market." In addition, it has stated that it intends to file complaints against Novartis for anticompetitive conduct with one or more of the European agencies regulating competition.

On June 16, 2021, Eli Lilly filed its application under § 1782 for an order requiring Novartis to produce documents relevant to its acquisition of the patent portfolio. Those documents, it explained, would assist it in asserting its anticompetition claims and patent-infringement defenses against Novartis in the European proceedings by "uncovering Novartis' intent behind acquiring and asserting the [patent] portfolio."

Eli Lilly's application was assigned to a magistrate judge for disposition in the first instance, and the magistrate judge granted it and authorized Eli Lilly to serve a subpoena on Novartis. Novartis thereafter filed a motion to intervene, which the magistrate judge granted, and it then filed a motion to vacate the magistrate judge's order and quash the subpoena. Eli Lilly, in turn, filed a motion to compel Novartis to produce the discovery.

4

After finding that Novartis had "sufficient enough contacts" with the Eastern District of Virginia to justify subjecting it to § 1782 discovery, the magistrate judge denied Novartis's motion and continued Eli Lilly's motion to compel production of the discovery.

The district court, however, issued an order dated January 18, 2022, vacating the magistrate judge's order, denying Eli Lilly's § 1782 application, and granting Novartis's motion to quash Eli Lilly's subpoena. In doing so, the court concluded that Novartis was not "found" in the Eastern District of Virginia, as required by § 1782(a), because it did not have a "physical presence" there. The court also found, in the alternative, that even if the meaning of "found" was coextensive with the limits of personal jurisdiction, as Eli Lilly argued, Novartis was still not "found" in the Eastern District of Virginia because it had insufficient contacts with the district. And finally, the court held conditionally that even if the statutory requirements of § 1782 had been satisfied, discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), would lead it to deny Eli Lilly's application.

Eli Lilly filed this appeal from the district court's order.

II

In denying Eli Lilly's application under 28 U.S.C. § 1782, the district court held first that Novartis was not "found" in the Eastern District of Virginia because it was not physically present there. Eli Lilly contends that the court erred in interpreting the word "found" so restrictively, arguing instead that a person is "found" within a district for

5

purposes of § 1782 when it is "within the personal jurisdiction" of the district court, extending to "the full reach of personal jurisdiction" under the Due Process Clause.

We are thus presented with the question of what the word "found" in § 1782 means when it is used to authorize a district court to order discovery from a person who "resides or *is found*" in the district. 28 U.S.C. § 1782(a) (emphasis added). Because this is a question of statutory interpretation, we review it de novo. *See McAdams v. Robinson*, 26 F.4th 149, 155 (4th Cir. 2022).

Section 1782 provides in relevant part, "The district court of the district *in which a person resides or is found* may order him to [provide discovery] for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a) (emphasis added). While the statute applies disjunctively to a person who "resides" or a person who "is found" in the district, neither party contends that "resides" is at issue here, as it is the more demanding term to satisfy. At least in the context of an individual person, "resides" suggests that the person is dwelling in the district permanently or continuously. *See Reside*, Merriam-Webster's Collegiate Dictionary 1060 (11th ed. 2020). On the other hand, an individual person is thought to be "found" in a district if he is physically present there. For example, one would not say that an individual sitting on the beach in Delaware is somehow "found" in Maryland. He is found where he physically *is*. *See, e.g.*, *United States v. Ayon-Brito*, 981 F.3d 265, 269 (4th Cir. 2020) (stating that an "alien is 'found' *wherever he is*" (quoting *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 460 (7th Cir. 2006))).

But the analysis is more complex in the context of a corporation. As the Supreme Court has noted, "When the litigants are *natural persons* the conceptions underlying venue

6

[designated by where the person is "found"] present relatively few problems in application. But in the case of *corporate litigants* these procedural problems are enmeshed in the wider intricacies touching the status of a corporation in our law." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) (emphasis added). A corporation is an abstract entity created by law to function as a person apart from its owners. And while it has no physical existence (except perhaps for its charter), its agents and property do have physical existence. Thus, inquiring as to where a corporation is found might give rise to various answers anchored in where its charter was issued or is retained; where its agents or properties are located; where — by analogy to an individual's presence — it is present; or to some other aspect. Here, we must determine what § 1782 means when it authorizes a district court to order discovery *from a corporation* that *is found* in its district.

We begin, as we ordinarily do when determining a statute's meaning, with an assessment of its text to find its "ordinary meaning at the time of [its] enactment." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (cleaned up). And that meaning will control "absent ambiguity or a clearly expressed legislative intent to the contrary." *Id.* (cleaned up).

To aid in this analysis, we turn to definitions of "found" contemporaneous with § 1782's enactment in 1948, as well as its amendments in 1949 and 1964. Editions of *Black's Law Dictionary* covering those periods defined "found" when applied to corporations as requiring that the corporation "be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process," thereby establishing its "actual

7

presence" there. *Found*, Black's Law Dictionary (4th ed. 1951); *Found*, Black's Law Dictionary (3d ed. 1933) (similar definition); *Found*, Black's Law Dictionary (4th rev. ed. 1968) (same).

The same understanding of "found" is reflected in Supreme Court decisions issued prior to § 1782's enactment that interpreted statutes in which the word is used with respect to a corporation. In *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79 (1918), the Court construed *the identical* statutory language that Congress employed in § 1782. Section 7 of the Sherman Act allowed plaintiffs to bring antitrust suits against defendants "in the district *in which the defendant resides or is found*." *See* Sherman Act, ch. 647, § 7, 26 Stat. 209, 210 (repealed 1955) (emphasis added). Construing that provision, the Court held that a corporation, to be "found" in a district, "*must be present* in the district by its officers and agents carrying on the business of the corporation," thus requiring a form of physical presence in the district. *People's Tobacco*, 246 U.S. at 84 (emphasis added).

Then, in *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359 (1927), the Court construed "found" similarly to require a form of a corporation's physical presence in the district. The Court considered § 12 of the Clayton Act, which addresses venue for antitrust suits against corporations by providing that antitrust actions "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district *wherein it may be found* or transacts business." 15 U.S.C. § 22 (emphasis added). In construing the provision, the Court distinguished between the meanings of "found" and "transacts business," noting that a corporation could "transact[] business" in a district even if it is "not present by agents

8

carrying on business of such character and in such manner that it is 'found' therein." *Eastman Kodak*, 273 U.S. at 373. The Court thus distinguished "transacting business" from "found" by the requirement in "found" that the corporation be *present* in the district.

In view of these contemporaneous definitions in legal dictionaries and Supreme Court opinions, we can presume that when Congress similarly used "found" in § 1782, it intended that the same meaning apply — that a corporation is found where it is physically present by its officers and agents carrying on the corporation's business. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well").

This textual conclusion is confirmed by legislative history, although any reference to legislative history in these circumstances might be gratuitous. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018) ("If the text is clear, it needs no repetition in the legislative history"). In 1949, when Congress amended § 1782 to allow "the district court of any district where the witness resides or may be found" to take the deposition of "any witness *within* the United States," *see* Act of May 24, 1949, Pub. L. No. 81-72, ch. 139, § 93, 63 Stat. 89, 103 (emphasis added), it expanded the scope of the original 1948 version of the statute, which allowed the specified district courts to take depositions only of witnesses "*residing within* the United States," *see* Act of June 25, 1948, Pub. L. No. 80-773, ch. 646, § 1782, 62 Stat. 869, 949 (emphasis added). In a report accompanying the 1949 amendment, the House Judiciary Committee stated that this amendment was intended

9

to "correct[] restrictive language in section 1782 . . . and permit[] depositions in any judicial proceeding *without regard to whether the deponent is 'residing' in the district or only sojourning there*."  H.R. Rep. No. 81-352, at 16 (1949) (emphasis added).  Because the statute used the two alternative terms, "resides" and "found," the report is fairly read as using "sojourning" as a synonym for the latter.  And "sojourning" has a definite connotation of physical presence.  *See, e.g.*, *Sojourning*, Black's Law Dictionary (4th ed. 1951) (stating that "sojourning" "applies to a temporary, as contradistinguished from a permanent, residence").

Thus, because Eli Lilly does not contend that Novartis was physically present in the Eastern District of Virginia by its officers and agents carrying on the corporation's business, we conclude that the district court acted in conformance with the requirements of § 1782 when it denied Eli Lilly's application to issue a discovery order directed against Novartis on the ground that Novartis was not found in the Eastern District of Virginia.

Eli Lilly disputes that the definition of "found" includes a requirement of physical presence, relying on the Supreme Court's decision in *Freeman v. Bee Machine Co.*, 319 U.S. 448, 454 (1943), where the Court said that "'found' in the venue sense does not necessarily mean physical presence."  But neither the Court's holding in *Freeman* nor the particular statement relied on by Eli Lilly advances its cause.

As to *Freeman*'s holding, the plaintiff in that case sought to amend its complaint against Freeman to add a treble-damages claim under § 4 of the Clayton Act at a time when Freeman was no longer physically present in the District of Massachusetts, where the action was pending.  319 U.S. at 449–50.  Freeman had opposed the amendment because

10

§ 4 of the Clayton Act requires that any action be brought in the district "in which the defendant resides or *is found* or has an agent." *Id.* at 452–53 (emphasis added) (quoting 15 U.S.C. § 15). The Court rejected Freeman's argument because, as it pointed out, Freeman was present in Massachusetts when he was served, entered a general appearance, defended on the merits, and filed a counterclaim in the action. "He was accordingly 'found' in the district." *Id.* at 453.

Despite that holding grounded on Freeman's presence in Massachusetts, the Court did note that "found" "does not necessarily mean physical presence." *Freeman*, 319 U.S. at 454. But this observation came in a broader context, which Eli Lilly elided:

> But "found" in the venue sense does not necessarily mean physical presence. We noted in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, [308 U.S. 165, 170–71 (1939)] that a corporation may be "found" in a particular district for venue purposes merely because it had consented to be sued there.

*Id.* The *Neirbo* principle to which the Court referred was that even though a corporation "must dwell in the place of its creation," 308 U.S. at 169 (citation omitted), it may be "found" in any state in which it consents to being sued by designating an agent to accept service of process, *id.* at 170–71; *see also Ex parte Schollenberger*, 96 U.S. 369, 375–76 (1877) (holding that a corporation is "found" in the district in which it has designated an agent for service of process, even though the corporation was not incorporated there). Thus, the *Freeman* statement to which Eli Lilly refers actually supports the principle that a corporation is "found" not only where it is incorporated but also where it has agents carrying on its business or designated to receive process. *See, e.g., Found*, Black's Law Dictionary (3d ed. 1933) (defining "found" as to a corporation as requiring that the

11

corporation "be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process").

Eli Lilly also points to a purportedly different definition of "found" in the 1951 edition of *Black's Law Dictionary*, noting that the definition states that "found" "does not necessarily mean physical presence." *See Found*, Black's Law Dictionary (4th ed. 1951). This particular reference in the definition, however, was simply a direct quote from *Freeman*. And more importantly, the definition to which Eli Lilly refers goes on to define "found" *as it is used in connection with a corporation*. That portion states:

> As ["found" is] applied to a corporation it is necessary that it be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process.

*Id.* (emphasis added).

In short, Eli Lilly's invocations of *Freeman* and *Black's Law Dictionary* hardly advance its position.

Even so, Eli Lilly mounts a more general attack on the district court's interpretation of "found" by arguing, at a jurisprudential level, that a physical-presence requirement for "found" is an "outmoded territorial approach," inconsistent with the "modern approach" articulated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. Under that approach, Eli Lilly contends, the concept of a corporation's "presence" in a district is "used merely to symbolize th[e] activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process."

12

(Quoting *International Shoe*, 326 U.S. at 316–17). Thus, in Eli Lilly's view of the modern approach, a corporation is "found" in a district whenever its contacts there "are sufficient to subject it to suit there, consistent with due process, whether that presence is physical or constructive."

Of course, we do not dispute that *International Shoe* is a foundational decision for determining when state courts may constitutionally exercise personal jurisdiction over defendants, including corporations. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (characterizing *International Shoe* as a "canonical decision" in establishing the "limits [of] a state court's power to exercise jurisdiction over a defendant" consistent with the Fourteenth Amendment's Due Process Clause). But Congress did not incorporate *International Shoe*'s "modern approach," as Eli Lilly suggests, when enacting § 1782. It instead used the word "found," a well-recognized term in this context with an established meaning. Thus, in interpreting § 1782, our task is only to apply that established meaning, not to convert "found" into an invocation of the personal jurisdiction standard of *International Shoe*. In other words, we do not find it appropriate to blur these two distinct concepts when interpreting § 1782.

To argue otherwise, Eli Lilly points to *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), which indeed held that a corporation is "found" in a district so long as it is properly subject to personal jurisdiction there consistent with the Due Process Clause. *See id.* at 528. But the *del Valle Ruiz* court did not discuss the plain meaning of "found." Indeed, by simply concluding that "found" refers to the personal jurisdiction standard under the Due Process Clause, the court ignored both the holding in *People's Tobacco,* 246 U.S. at

13

84, which was controlling, as well as contemporaneous legal dictionary definitions of "found." And while the court did recognize that § 1782's legislative history indicated that "found" embraced a physical-presence requirement, the court conclusorily dismissed that evidence to reach the opposite conclusion. *See del Valle Ruiz*, 929 F.3d at 527–28. With respect, we are not persuaded by the *del Valle Ruiz* conclusion that "found" means something other than its plain meaning.

Because our ruling affirms the district court on the basis of its interpretation of the word "found" in § 1782, we need not address the court's alternative conclusion that, assuming the meaning of "found" is coextensive with the constitutional limits of personal jurisdiction, Novartis was still not "found" in the Eastern District of Virginia.

III

In denying Eli Lilly's § 1782 application for discovery, the district court also concluded that "important discretionary factors weigh[ed] heavily in favor of" its decision. (Citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)). Thus, the court concluded conditionally that, "[e]ven assuming that § 1782's requirements [were] met," the discretionary factors identified in *Intel* supported its denial of Eli Lilly's application.

In *Intel*, the Supreme Court held that "a district court is not *required* to grant a § 1782(a) discovery application simply because it has the [statutory] authority to do so." 542 U.S. at 264 (emphasis added). The provision's language that a district court "*may* order" discovery indicates that any decision is left to the court's discretion. 28 U.S.C. § 1782(a) (emphasis added); *see also In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014).

14

Thus, we review the district court's decision for an abuse of discretion.  *See Naranjo*, 768  F.3d at 347.

The *Intel* Court identified four factors for district courts to consider in exercising discretion under § 1782, namely: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  542 U.S. at 264–65.  But *Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered.  Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal.  *Id.* at 264 (noting that the factors identified "*bear consideration* in ruling on a § 1782(a) request" (emphasis added)).

In this case, while the district court stated generally that it had indeed considered the *Intel* factors, it focused particularly on the third and fourth factors.  It concluded that the discovery requested by Eli Lilly was "unduly burdensome" because Eli Lilly gave "no indication" that the materials it sought were "located in the Eastern District of Virginia or even in the United States."  The court explained, "Eli Lilly in essence requests that a substantial volume of data and materials located abroad be brought into the United States for subsequent use in proceedings abroad, a nonsensical result."  The court also concluded

15

that Eli Lilly's § 1782 application was "an attempt to circumvent foreign discovery procedures" in the parties' pending European suits. Indeed, since this case was briefed, we have learned that the Irish High Court issued a judgment dated April 26, 2022, adjudicating four discovery motions raised by Novartis and Eli Lilly in the Irish proceedings. *See Novartis Pharma AG v. Eli Lilly Nederlands B.V.* [2022] IEHC 234 (Ir.). And the categories of documents that that decision describes Eli Lilly having requested from Novartis appear to overlap significantly with those requested by Eli Lilly in its § 1782 application. *See id.* at para. 103.

It is apparent that the factors addressed by the district court fall squarely within those factors identified by the Supreme Court in *Intel* as relevant. We accordingly conclude that the district court did not abuse its discretion in concluding that the *Intel* factors weighed in favor of denying Eli Lilly's § 1782 application.

\* \* \*

For the reasons given, the district court's ruling dated January 18, 2022, denying Eli Lilly's application seeking discovery from Novartis, is affirmed.

AFFIRMED