**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1519**

JOSE SANTOS GUZMAN GONZALEZ,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 20, 2018                              Decided: June 27, 2018

Before WYNN, FLOYD, and HARRIS, Circuit Judges.

Petition granted; order reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Floyd and Judge Harris joined.

**ARGUED:** Japheth Nthautha Matemu, MATEMU LAW OFFICE, PC, Raleigh, North Carolina, for Petitioner. Dawn S. Conrad, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Derek C. Julius, Assistant Director, Patricia E. Bruckner, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

WYNN, Circuit Judge:

Petitioner Jose Guzman Gonzalez entered the United States illegally in the early 2000s. Several years later, Guzman pleaded guilty in North Carolina state court to misdemeanor possession of a small amount of marijuana. The state court withheld adjudication of guilt, instead entering a verdict of prayer for judgment continued and assessing Guzman $100 in court costs.

The question presented for our review is purely legal: does the imposition of $100 in court costs, assessed attendant to a prayer for judgment continued under North Carolina law, qualify as a "conviction" within the meaning of the Immigration and Naturalization Act (the "Act")? 8 U.S.C. § 1101 *et seq.*; *id.* § 1101(a)(48)(A). The Board of Immigration Appeals (the "Board") held that it does. We disagree. Accordingly, we grant Guzman's petition for review, reverse the Board's Order, and remand Guzman's case for further proceedings consistent with this opinion.

I.

Guzman left his native El Salvador and entered the United States illegally, likely in December 2000. In August 2002, Guzman received a North Carolina citation for misdemeanor possession of up to one-half of an ounce of marijuana, in violation of N.C. Gen. Stat. § 90-95(d)(4). Three months later, Guzman pleaded guilty to the offense in the

state district court, sitting in Wake County, North Carolina.[1]  At that time, the state court entered a verdict of "prayer for judgment continued" and assessed $100 in court costs. The court did not impose restitution or order Guzman to pay a fine.

Thirteen years later—in 2015—the Department of Homeland Security ("Homeland Security") charged Guzman with removability from the United States, a charge that Guzman conceded.  However, Guzman applied for cancellation of removal as a non-permanent resident under 8 U.S.C. § 1229b(b)(1).  Homeland Security orally moved to pretermit the application, arguing that Guzman's prior offense for misdemeanor marijuana possession barred cancellation because it satisfied the relevant federal statutory definition of "conviction" for a controlled substance offense.  *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II), 1101(48)(A).

The Immigration Judge presiding over Guzman's removal proceedings granted Homeland Security's oral motion.  In particular, the Immigration Judge determined that the state-court resolution of Guzman's misdemeanor possession charge satisfied the Act's statutory definition of "conviction" because Guzman had both pleaded guilty to the underlying offense and "paid $100 in costs" attendant to his plea.  A.R. 41.  As the sole support for this determination, the Immigration Judge cited a 2008 opinion issued by the Board of Immigration Appeals concluding that costs and surcharges imposed in the

---

[1] The sole record of these state-court proceedings is a citation-disposition form obtained from the Wake County Clerk of Superior Court in 2014.

3

criminal sentencing context satisfy the Act's relevant definitions. *Id.* (citing *In re Cabrera*, 24 I. & N. Dec. 459, 462 (B.I.A. 2008)).

Guzman appealed the Immigration Judge's determination to the Board. The Board summarized and agreed with the Immigration Judge's analysis, also citing *Cabrera* as its sole support, and therefore dismissed Guzman's appeal. Guzman timely sought relief in this Court.

## II.

## A.

Certain aliens are ineligible for admission to the United States. 8 U.S.C. § 1182. For instance, when, as here, "[a]n alien [is] present in the United States without being admitted or paroled," that alien "is inadmissible." *Id.* § 1182(a)(6)(A)(i). Accordingly, the government may institute proceedings to remove such inadmissible aliens from the United States. *Id.* § 1229a. However, an alien charged with removability may apply for cancellation of removal. *Id.* § 1229b. The alien must satisfy certain criteria to be eligible for cancellation, *e.g.*, *id.* § 1229b(b)(1), such as the criterion at issue here—that the alien does not have a prior "conviction" for a controlled substance violation, *id.* §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(II). If the government believes the alien does not satisfy all applicable cancellation criteria, it may move to "pretermit" the alien's application, thereby effectively requesting a determination that the alien is ineligible for cancellation. *See In re Castrejon-Colino*, 26 I. & N. Dec. 667, 668 (B.I.A. 2015).

B.

The single issue presented for our review is whether the state-court disposition of Guzman's 2002 offense for misdemeanor possession satisfies the definition of "conviction" as that term is used in the Act's section governing cancellation of removal.[2] 8 U.S.C. § 1229b(b)(1)(C). Because this presents a question of statutory interpretation, we review the issue de novo. *See Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014). And because only one Board member issued the underlying opinion, the opinion is not one in which the Board "exercis[ed] its authority to make a rule carrying the force of law, and thus . . . is not entitled to *Chevron* deference." *Id.* at 909–10.[3] Instead, we may accord the underlying opinion "modest [*Skidmore*] deference," depending on "the thoroughness evident in [the Board's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* at 910 (quoting *A.T. Massey Coal Co. v. Holland*, 472 F.3d 148, 169 (4th Cir. 2006), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

The Act provides, in relevant part:

---

[2] Guzman also argues that because "a verdict of 'prayer for judgment' does not constitute a conviction under North Carolina law," his citation disposition cannot fall within the Act's ambit. Pet'r's Br. 10. However, the Act, not North Carolina law, governs the relevant definition of "conviction." *See, e.g.*, *In re Eslamizar*, 23 I. & N. Dec. 684, 686–87 (B.I.A. 2004) (en banc). Accordingly, we reject Guzman's argument that North Carolina's definition alone resolves this case.

[3] When, as here, the Board issues its own opinion rather than merely adopting the Immigration Judge's underlying opinion, we review only the Board's opinion. *E.g.*, *Martinez*, 740 F.3d at 908.

5

*The term "conviction" means,* with respect to an alien, a formal judgment of guilt of the alien entered by a court or, *if adjudication of guilt has been withheld, where--*

(i) a judge or jury has found the alien guilty or *the alien has entered a plea of guilty* or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, *and*

(ii) *the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.*

8 U.S.C. § 1101(a)(48)(A) (emphases added). The parties agree that Guzman did not have a formal judgment entered against him and that he pleaded guilty to the misdemeanor possession offense. Accordingly, only the second prong of the Act's definition of a "conviction" when adjudication of guilt has been withheld is at issue—i.e., whether the $100 in costs assessed attendant to Guzman's guilty plea constitute a "punishment" or "penalty" within the meaning of the Act.[4]

---

[4] Five days prior to oral argument, the government submitted a letter pursuant to Federal Rule of Appellate Procedure 28(j) ("Citation of Supplemental Authorities"), citing several long-established authorities and arguing, for the first time, that Guzman failed to administratively exhaust his claim that court costs under North Carolina law do not satisfy the relevant Act definitions. Assuming, without deciding, that the government properly raised this argument, *but see, e.g.*, *United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013) ("We do not countenance a litigant's use of Rule 28(j) as a means to advance new arguments couched as supplemental authorities."), we conclude it fails because Guzman adequately raised the issue below. In particular, Guzman argued to the Board that "costs . . . do not convert a [prayer for judgment] into a judgment" because costs do not "amount to punishment." A.R. 14. The Board addressed this argument, explicitly agreeing with the Immigration Judge's determination "that the record of conviction shows [Guzman] was ordered to pay $100 as a penalty for his conviction," therefore satisfying the Act's "punishment [or] penalty" requirement. *Id.* at 4. Accordingly, Guzman adequately exhausted his administrative remedies prior to petitioning this Court.

6

The Act does not define the terms "punishment" or "penalty," and this Court has not yet addressed whether the imposition of "costs" under North Carolina law constitutes a "punishment" or "penalty" for purposes of the Act. Conceding that this issue is one "of first impression for the Fourth Circuit," the government argues that the "costs" assessed in Guzman's case are analogous to "fine[s] or restitution," which courts have held, at least in the criminal sentencing context, "constitute[] a form of 'punishment' or 'penalty'" under the Act. Resp't's Br. at 16–17. We disagree.

To resolve Guzman's petition, we must address three issues: (1) the definitions of "punishment" and "penalty," as those terms are used in 8 U.S.C. § 1101(a)(48)(A); (2) the import under North Carolina law of a verdict requiring payment of "costs" in conjunction with a prayer for judgment continued; and, (3) in view of those substantive definitions, whether the imposition of costs assessed attendant to a North Carolina disposition of prayer for judgment continued constitutes a "punishment" or "penalty" for purposes of the Act. We examine each issue in turn.

1.

Turning first to the Act's definition of "punishment" and "penalty," we analyze these terms "start[ing] with the plain language." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011) (quoting *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004)). In so doing, "we give the terms their 'ordinary, contemporary, common meaning, absent an indication Congress intended [them] to bear some different import.'" *Id.* (quoting *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008)). Applying this well-established interpretive approach, we conclude that a

7

monetary assessment amounts to a "punishment" or "penalty" for purposes of Section 1101(a)(48)(A) if it is principally intended to serve a punitive purpose—that is, if a judge orders the monetary assessment to advance a punitive goal tethered to the defendant's degree of culpability in light of her specific actions.

Black's Law Dictionary and Merriam-Webster define "penalty" and "punishment" in similar terms, often using one term to help give meaning to the other. A punishment is "[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law," *Punishment*, Black's Law Dictionary (10th ed. 2014), or "a penalty inflicted by a court of justice on a convicted offender," *Webster's Third New International Dictionary* 1843 (Philip Babcock Gove et al. eds., 2002) [hereinafter *Webster's*]. Similarly, a penalty is "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine," *Penalty*, Black's Law Dictionary (10th ed. 2014), or "the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense," *Webster's*, *supra*, at 1668. As the Ninth Circuit has recognized, these largely coextensive definitions "require[] a 'conviction' [as defined in the Act] to have some *punitive* aspect." *Retuta v. Holder*, 591 F.3d 1181, 1188 (9th Cir. 2010) (emphasis added); *see also Webster's*, *supra*, at 1843 (defining punishment as a judicially imposed sanction "aiming at either *prevention, retribution, or reformation*" (emphasis added)).

This punitive understanding of the meaning of "punishment" and "penalty" in Section 1101(a)(48)(A) conforms to the construction of those terms in other statutory provisions. For example, in construing the term "penalty" in a federal statute of

8

limitations, the Supreme Court appealed to longstanding precedent regarding the meaning of the term and held that "a pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others from offending in like manner.'" *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892)); *see also Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 423 (1915) (holding that the words "penalty or forfeiture" in federal statute "refer to something imposed in a *punitive way* for an infraction of a public law" (emphasis added)). And even when a statute delineates a monetary sanction that is not expressly "define[d] . . . in terms as a punishment or penalty," if the sanction is imposed as retribution to the offender and to "operate[] as a warning" to similarly situated individuals, then the sanction is "a punishment or penalty" due to its punitive "character." *See Helwig v. United States*, 188 U.S. 605, 610–11 (1903).

To properly advance these punitive goals of retribution and deterrence, a particular punishment or penalty must account for the culpability flowing from the actor's underlying conduct. For instance, punitive damage awards generally must be proportionate to the "reprehensibility of the defendant's [specific] conduct." *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996); *id.* at 575 n.23 ("The flagrancy of the misconduct is thought to be the primary consideration in determining the amount of punitive damages." (internal quotation marks omitted)); *see also* Restatement (Second) of Torts § 908 (1979) ("Punitive damages are . . . awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). So too must a criminal punishment be proportionate to the wrongfulness of

the crime. *See, e.g.*, *Solem v. Helm*, 463 U.S. 277, 284 (1983) ("The principle that a punishment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence."). And this Court and other courts have concluded that a federal victim's assistance fund assessment constitutes a "punishment" for purposes of the Assimilative Crimes Act because, among other reasons, the assessment "varies in severity with the nature of the crime committed." *See, e.g.*, *United States v. King*, 824 F.2d 313, 316 (4th Cir. 1987); *United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir. 1985) (also noting that assessment was "penal in nature").

Because a punishment or penalty must be proportionate to a defendant's wrongdoing, courts generally refuse to treat a monetary assessment as a punishment or penalty when the assessment solely reflects the costs of compensating a private party or the government for losses resulting from the wrongdoing. *See Kokesh*, 137 S. Ct. at 1642 (distinguishing "penalty" from judgments "compensating a victim for his loss"); *Gabelli v. S.E.C.*, 568 U.S. 442, 451–52 (2013) (stating that "penalties . . . go beyond compensation, [and] are intended to punish . . . and label defendants wrongdoers"); *Johnson v. S.E.C.*, 87 F.3d 484, 488 (D.C. Cir. 1996) ("[W]e conclude that a 'penalty,' as that term is used in [28 U.S.C.] § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action."). For example, courts have recognized that monetary interest imposed under the Internal Revenue Code "is not a penalty but is intended only to compensate the Government for delay in payment of a tax." *Springer v. Comm'r*, 580 F.3d 1142, 1146 (10th Cir. 2009) (quoting *Avon Prods.,*

10

*Inc. v. United States*, 588 F.2d 342, 343 (2d Cir. 1978)). Likewise, courts have held that costs imposed to reimburse a state professional regulatory body for expenses incurred in holding a disciplinary hearing do not constitute a "penalty" for purposes of the Bankruptcy Code's discharge provision. *See In re Schaffer*, 515 F.3d 424, 427, 433 (5th Cir. 2008); *In re Taggart*, 249 F.3d 987, 991–93 (9th Cir. 2001), *superseded by statute*, Cal. Bus. & Prof. Code § 6086.10(e) (West 2004), *as recognized in In re Findley*, 593 F.3d 1048, 1052–53 (9th Cir. 2010). The distinction between compensatory relief and penalties harkens back to the days of the divided bench in our judicial system: "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Tull v. United States*, 481 U.S. 412, 422 (1987).

And because a penalty or punishment must be proportionate to a defendant's wrongdoing, courts are more likely to treat a monetary assessment as a penalty or punishment if the adjudicator is endowed with discretion to determine both whether to impose the assessment and the amount of any assessment imposed. *Compare Richmond v. N.H. Supreme Court Comm. On Prof'l Conduct*, 542 F.3d 913, 919 (1st Cir. 2008) (concluding that "costs" assessed by state in attorney disciplinary proceeding was a "penalty" for purposes of the Bankruptcy Act's discharge provision because the costs were "quite discretionary," rather than routine), *with Taggart*, 249 F.3d at 991–94 (concluding that costs imposed in attorney disciplinary proceeding were not a "penalty" for purposes of discharge provision because they were "mandatory" rather than "discretionary").

Section 1101(a)(48)(A) nowhere indicates that Congress intended to establish a definition of penalty or punishment contrary to these long-standing and well-established understandings of the terms. On the contrary, Section 1101(a)(48)(A)(ii) states that a "punishment" or "penalty" constitutes a component of a "conviction" *only* if the punishment or penalty is ordered by a "judge." By contrast, in other provisions in the very same subsection, Congress elected to refer to orders of "a court." 8 U.S.C. §§ 1101(a)(48)(B) ("[T]he period of incarceration or confinement ordered by a court of law."), 1101(a)(48)(A) ("[A] formal judgment of guilt of the alien entered by a court."); *cf. also* § 1101(a)(48)(A)(i) (specifying "a judge *or* jury" as satisfactory actors (emphasis added)). By juxtaposing "judge" with "court," Congress evinced an intent that "penalties" and "punishments" in Section 1101(a)(48)(A)(ii) constitute discretionary acts of judgment as opposed to the broader set of ministerial or administrative decrees or assessments a court may impose. *Cf., e.g.*, *Decatur v. Paulding*, 39 U.S. 599, 606 (1840) (Baldwin, J., concurring) (distinguishing a "judicial act," characterized as an "exercise [of] discretion," from a "mere ministerial act required by law"); *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997) (explaining that, for purposes of the Bankruptcy Code's automatic stay provision, "when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the discretion or judgment, the resultant act is ministerial . . . . Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment").

12

Likewise, other references to "penalties" in the Act correspond to the common punitive understanding of the term, providing an adjudicator with discretion to impose a sanction proportionate to the defendant's wrongdoing. *See, e.g.*, 8 U.S.C. §§ 1306(a) (section entitled "Penalties" for registration-related offenses, providing that alien "shall, upon conviction . . . , be fined not to exceed $1,000 or be imprisoned not more than six months, or both"), 1253(a) (providing that alien "shall be fined under Title 18, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 1227(a) of this title), or both"); *see also* § 1324d(a) (providing that alien "shall pay a civil penalty of not more than $500 to the Commissioner for each day the alien is in violation of this section").

That punishment and penalty refer to a discretionary sanction imposed for a punitive purpose is further borne out in the relevant caselaw. For instance, this Court has held that probationary conditions tailored by a judge to the underlying offense conduct constitute a penalty or punishment. *See Jaquez v. Sessions*, 859 F.3d 258, 262 (4th Cir. 2017) (holding that state judge ordered "some form of punishment, penalty, or restraint on . . . alien's liberty" when, given the offender's plea of guilty to cocaine possession, state judge "placed [offender] on probation for one year and mandated numerous conditions, including good behavior, full-time employment, and abstention from alcohol and drugs" (quoting 8 U.S.C. § 1101(a)(48)(A)(ii))); *Dung Phan v. Holder*, 667 F.3d 448, 452 (4th Cir. 2012) (drug-specific "conditions of probation, backed by the specter of a suspended prison sentence, are most certainly a form of punishment or penalty"). Our sister circuits similarly have focused on whether a monetary assessment or other sanction

was tailored to a defendant's culpability and imposed at the discretion of a judge in determining whether the assessment or sanction amounted to a penalty or punishment. *See, e.g.*, *Moosa v. I.N.S.*, 171 F.3d 994, 1002, 1005–06 (5th Cir. 1999) (explaining that petitioner's "deferred adjudication" in Texas was a "conviction" under the Act because such adjudications grant judge discretion to "place the defendant on community supervision" or "impose a fine applicable to the offense," and judge exercised such discretion in imposing various conditions attendant to alien's deferred adjudication); *Griffiths v. I.N.S.*, 243 F.3d 45, 54–55 (1st Cir. 2001) (explaining that it could be "possible" to find that state judge effectively imposed a "time-served" sentence because judge determined that a "past punishment" for the underlying offense conduct was sufficient "punishment for the present charge"). The government does not point to—nor have we found—a case holding that a petitioner's guilty plea and subsequent payment of a mandatory assessment untethered from the petitioner's degree of culpability satisfies the Act's "punishment" or "penalty" requirement.

In sum, we conclude that Section 1101(a)(48)(A) employs the terms "punishment" and "penalty" in their plain and ordinary sense. This requires a judge to order a *punitive* sanction—i.e., one that is intended to discipline or deter and is proportionate to the underlying offense conduct. This definition accords with dictionary definitions, common understanding, the Act's statutory context, and relevant caselaw.

2.

With this definition of punishment or penalty in place, we next look to North Carolina law to determine the substantive character of the monetary assessment imposed

14

in this case.  *See Cabrera*, 24 I. & N. Dec. at 460 ("[W]e conclude that a uniform Federal definition should govern in determining whether the assessment of costs and surcharges constitutes a 'penalty' or 'punishment,' *irrespective* of how the State might characterize them." (emphasis added)).  In assessing the state sanction at issue, it is not the state-law "label" for the monetary assessment that guides our analysis, but rather the substance of the assessment that dictates whether it falls under the Act's definition of penalty or punishment.  *See, e.g.*, *Eslamizar*, 23 I. & N. Dec. at 687–88 (concluding Oregon's "use [of] the label 'criminal' to describe" the relevant state proceedings must yield to the substance of the actual state-law process); *Griffiths*, 243 F.3d at 53 ("[T]he B[oard] assessed whether the guilty-filed disposition under Massachusetts law fell within the category demarcated by the [Act's] second [conviction] prong.").

In North Carolina, there are three specific types of post-verdict monetary payments that might have been applicable in the instant case: "costs," "restitution," and "fines."  "Costs . . . are entirely creatures of legislation, and without this they do not exist."  *City of Charlotte v. McNeely*, 190 S.E.2d 179, 185 (N.C. 1972) (quoting *Clerk's Office v. Comm'rs of Carteret Cty.*, 27 S.E. 1003, 1003 (N.C. 1897)).  "[I]t follows a fortiori that '[c]ourts . . . have no power to adjudge costs against anyone on mere equitable or moral grounds.'"  *Id.* (alterations in original) (quoting 20 C.J.S. Costs §§ 1, 2 (1940)).  Instead, costs are tied to the "[r]evenues and [e]xpenses of the Judicial Department" incurred in adjudicating a defendant.  N.C. Gen. Stat. ch. 7A, subch. VI; *see id.* § 7A-2(6).  For example, the statutory costs imposed at the superior court level include $15 for use of "pretrial release services," $30 for "the use of the courtroom and

related judicial facilities," and $154.50 "[f]or support of the General Court of Justice." *Id.* §§ 7A-304(a)(2), (4), (5). Additionally, a judge need not be the court official to assess them: even if a case "never reache[s] the trial calendar and [is one] in which the judge [i]s not involved in its disposition, the clerk, through his deputy or assistant, [may be] the proper official to tax or assess costs." *Thigpen v. Piver*, 246 S.E.2d 67, 70 (N.C. Ct. App. 1978).

By contrast, under North Carolina law "restitution" serves to compensate an aggrieved party. *See* N.C. Gen. Stat. § 15A-1340.35 to .36; *Shore v. Edmisten*, 227 S.E.2d 553, 559 (N.C. 1976). To that end, in determining whether, and in what amount, to award restitution, a judge must make findings regarding the amount of financial harm the defendant's unlawful actions caused the aggrieved party. *See, e.g.*, *Shore*, 227 S.E.2d at 559; *State v. Killian*, 245 S.E.2d 812, 815 (N.C. Ct. App. 1978) ("[T]he [restitution] sum ordered or recommended must be reasonably related to the damages incurred."). Similarly, North Carolina defines "fines" as "pecuniary punishment exacted by the state and imposed in the discretion of the trial court for the purpose of punishing the defendant." *Shore*, 227 S.E.2d at 559. Again, the imposition of a fine requires a judge to determine, based on the facts and circumstances of the offense, the appropriate amount of monetary sanction necessary to punish the defendant and deter similar misconduct in the future.

3.

Having determined the meaning of penalty and punishment in Section 1101(a)(48)(A)(ii) and the nature of "costs" under North Carolina law, we now turn to

16

whether the costs imposed in Guzman's case amount to a penalty or punishment. We conclude that they do not.

As explained above, under North Carolina law, "costs" are not punitive in nature. Costs cannot be imposed "on mere equitable or moral grounds," *McNeely*, 190 S.E.2d at 185—i.e., as a discretionary judicial act—but instead are imposed as a ministerial act, pursuant to statute. Additionally, the costs are designed to compensate the North Carolina justice system for the cost of adjudication. *See* N.C. Gen. Stat. § 7A-304 (imposing costs for various court or law-enforcement services and facilities). In providing this compensation, controlled substance violations do not trigger any unique North Carolina criminal costs. *See* N.C. Gen. Stat. §§ 7A-304, 7A-320. And, unlike the judicial discretion inherent in determining an appropriate fine amount, costs are mandatory, *see* N.C. Gen. Stat. § 7A-304, and therefore may be assessed without any judicial input or action, *see Thigpen*, 246 S.E.2d at 70. Indeed, the record is devoid of any evidence that the costs assessed against Guzman were imposed by a judge, rather than a clerk, as the Act requires.

Furthermore, costs are particularly lacking in punitive character when, as in Guzman's case, they are assessed attendant to North Carolina's unique disposition method of a prayer for judgment continued. "When the prayer for judgment is continued there is no judgment—only a motion or prayer by the prosecuting officer for judgment." *State v. Griffin*, 100 S.E.2d 49, 51 (N.C. 1957). Absent a final judgment, there can be no sentence. *See Barbour v. Scheidt*, 97 S.E.2d 855, 857 (N.C. 1957) (explaining that a verdict of prayer for judgment "is a mere suspending of active proceedings in the case,"

17

therefore without "an immediate sentence"); *State v. Crook*, 20 S.E. 513, 515 (N.C. 1894); *State v. Brown*, 430 S.E.2d 433, 434 (N.C. Ct. App. 1993). To be sure, "when the court enters an order continuing the prayer for judgment and at the same time *imposes conditions amounting to punishment (fine or imprisonment)* the order is in the nature of a final judgment," with an attendant sentence, "from which the defendant may appeal." *See Griffin*, 100 S.E.2d at 51 (emphasis added). However, a "[p]rayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment," N.C. Gen. Stat. § 15A-101(4a), and therefore "a requirement to pay the costs of court" does not constitute a sentencing "[c]ondition[] . . . 'amounting to punishment.'" *State v. Popp*, 676 S.E.2d 613, 614 (N.C. Ct. App. 2009) (emphasis added) (quoting *Brown*, 430 S.E.2d at 434). In other words, an assessment of costs attendant to a verdict of prayer for judgment continued in no way alters the fact that entry of judgment is withheld "unconditionally," i.e., with "no conditions . . . imposed" upon the pleading party. *See State v. Pledger*, 127 S.E.2d 337, 340 (N.C. 1962).

The Board nonetheless found that Guzman's payment of costs satisfied the Act's definition of penalty or punishment because it conformed to the Board's prior statement in *Cabrera* that the "imposition of costs and surcharges in the criminal sentencing context constitutes a form of 'punishment' or 'penalty'" within the meaning of the Act. A.R. 2 (citing *Cabrera*, 24 I. & N. Dec. at 462); *see also id.* at 41 n.1 (same). *Cabrera* is meaningfully distinguishable from Guzman's case, however. To begin, *Cabrera* dealt with whether "costs and surcharges" imposed under *Florida* law pursuant to a plea of nolo contendere constituted a penalty or punishment for purposes of the Act. 24 I. & N.

18

Dec. at 459–60. Accordingly, *Cabrera* did not address whether costs assessed pursuant to *North Carolina* law constitute a penalty or punishment—the dispositive issue here. The difference in governing law is significant. Unlike the North Carolina costs taxed against Guzman, all of which were mandatory, some of the Florida costs and surcharges assessed against the defendant in *Cabrera* were not mandatory, but imposed as a matter of judicial discretion. *Id.* at 460. Therefore, whereas North Carolina costs are not punitive in character, the discretionary costs and surcharges at issue in *Cabrera* were punitive in character. Because courts must look to the substance of an assessment or sanction in determining whether it constitutes a penalty or punishment, *see Eslamizar*, 23 I. & N. Dec. at 687–88, and because the Florida costs at issue in *Cabrera* were substantively different than the North Carolina costs at issue here, *Cabrera* does not control this case.

III.

In sum, we conclude that the $100 in costs assessed attendant to Guzman's guilty plea and the North Carolina state court's entry of a verdict of prayer for judgment continued do not constitute a "punishment" or "penalty" within 8 U.S.C. § 1101(a)(48)(A)'s definition of "conviction." We therefore grant Guzman's petition, reverse the Board's Order, and remand the case to the Board for further proceedings consistent with this opinion.

*PETITION GRANTED; REVERSED AND REMANDED*