**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1324**

───────────

GENOVEVO ALVAREZ RONQUILLO,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Argued: May 6, 2025                    Decided: August 15, 2025

Amended: August 25, 2025

───────────

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Petition denied by published opinion. Senior Judge Floyd wrote the opinion in which Judge Richardson and Judge Heytens joined.

───────────

**ARGUED:** Angelene G. Superable, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Kathryn M. McKinney, for Respondent. **ON BRIEF:** Erica Hashimoto, Director, John H. Peng, Supervising Attorney, Cassidy E. Jones, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Drew Ensign, Deputy Assistant Attorney General, Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────

FLOYD, Senior Circuit Judge:

This petition concerns whether a conviction under 18 U.S.C. § 922(a)(1)(A) qualifies as an "aggravated felony." Because we agree with the Board of Immigration Appeals (BIA) that it does, we deny the petition for review.[1]

I.

Petitioner Genovevo Alvarez Ronquillo is a native and citizen of Mexico and lawful permanent resident of the United States. Between 2018 and 2019, he purchased firearms in the United States and then, without a license, resold them in Mexico.

As a result of his unlicensed firearms sales, Alvarez Ronquillo was convicted of violating 18 U.S.C. § 922(a)(1)(A) (among other statutes) and sentenced to 78 months in prison. Section 922(a)(1)(A) states: "It shall be unlawful for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

The Department of Homeland Security (DHS) initiated removal proceedings against Alvarez Ronquillo based on his § 922(a)(1)(A) conviction, alleging that he committed an

---

[1] The immigration judge (IJ) in this case appeared remotely from his assigned post in Texas. Therefore, the proper venue for this petition may be the Fifth Circuit. *See Herrera-Alcala v. Garland*, 39 F.4th 233, 243 (4th Cir. 2022) ("Venue … depends on the location of the [IJ]."). However, when, as here, neither party seeks a transfer, we need not analyze venue. *See Annor v. Garland*, 95 F.4th 820, 825 n.1 (4th Cir. 2024) (declining to examine venue because the venue provision, 8 U.S.C. § 1252(b)(2), "is nonjurisdictional" and neither party requests a transfer).

2

"aggravated felony." Under the Immigration and Nationality Act (INA), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii); *see Hsieh v. Bondi*, 139 F.4th 337, 340 (4th Cir. 2025) (recognizing same). DHS specifically alleged that he committed the generic aggravated felony of "illicit trafficking in firearms." *See* 8 U.S.C. § 1101(a)(43)(C) (defining "aggravated felony" to include "illicit trafficking in firearms").

The IJ and (later) the BIA agreed that Alvarez Ronquillo committed an aggravated felony. They also denied his alternate grounds for relief and ordered his removal.

Alvarez Ronquillo now petitions for review of the BIA's order.[2] He argues that his conviction is not an aggravated felony because § 922(a)(1)(A) is not a categorical match for the generic offense of "illicit trafficking in firearms." In other words, he argues that § 922(a)(1)(A) criminalizes a broader range of conduct than "illicit trafficking in firearms."[3]

## II.

This petition presents a question of statutory interpretation, which we review de novo. *Gonzalez v. Sessions*, 894 F.3d 131, 136 (4th Cir. 2018); *see Wambura*, 980 F.3d at 369 n.3 ("We review legal questions raised in petitions for review de novo.").

---

[2] When, as here, "the BIA issued its own detailed opinion" and did not "expressly adopt[] the IJ's opinion," "we focus our review on the BIA's decision." *Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020).

[3] Alvarez Ronquillo raises a number of additional issues in his informal brief, but we summarily reject them as lacking merit.

3

As previewed, under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include the generic offense of "illicit trafficking in firearms." *Id.* § 1101(a)(43)(C). At issue here is whether Alvarez Ronquillo's § 922(a)(1)(A) conviction qualifies as "illicit trafficking in firearms."

To answer this question, we apply the "categorical approach." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017) (citing *Kawashima v. Holder*, 565 U.S. 478, 483 (2012)). "Under that approach, we ask whether 'the … statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Id.* (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)).

"In other words, we presume that the … conviction 'rested upon … the least of th[e] acts' criminalized by [§ 922(a)(1)(A)], and then we determine whether that conduct would fall within the federal definition of ['illicit trafficking in firearms']." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010) (We focus on the least of the criminalized acts so that noncitizens are "removable based on the nature of their convictions, not based on their actual conduct.")). If such conduct falls within the definition, there is a categorical match, and the conviction is an aggravated felony. *See id.*

Of note, the parties agree that both statutes use the same definition of "firearms." *See* 18 U.S.C. § 921(a)(3) (defining "firearm"). Therefore, Alvarez Ronquillo "makes a categorical overbreadth challenge only to the 'illicit trafficking' component of 'illicit trafficking in firearms.'" Opening Br. 15 n.2.

4

A.

To begin the categorical approach, we turn to the text of the aggravated felony statute. *See* 8 U.S.C. § 1101(a)(43)(C). This statute, however, does not define the generic offense of "illicit trafficking in firearms." We therefore must rely on "the normal tools of statutory interpretation" to determine "'what Congress probably meant.'" *Esquivel-Quintana*, 581 U.S. at 391 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006)).

"In construing a statute's meaning, we 'begin, as always, with the language of the statute.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (quoting *Duncan v. Walker*, 533 U.S. 167, 172 (2001)). Our aim is to determine whether that language "has a plain and unambiguous meaning[.]" *Id.* (quoting *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012)). "If the plain language is unambiguous, we need look no further." *Id.* "'[A]bsent ambiguity or a clearly expressed legislative intent to the contrary,'" we simply give the statute its "plain meaning." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)).

The government proposes that the plain meaning of "illicit trafficking in firearms" is "unlawful trading or dealing in firearms." We agree. Alvarez Ronquillo objects to this definition for a host of reasons. We examine them below but find each unpersuasive.

i.

First, Alvarez Ronquillo argues that the government's interpretation parrots the BIA's, and the BIA is not entitled to *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (Agency decisions "constitute a body of experience and informed

5

judgment to which courts and litigants may properly resort for guidance" so long as they have the "power to persuade.").[4]  In doing so, he claims that the BIA's interpretation follows unpersuasive precedent, namely *Chacon v. Wilkinson*, 988 F.3d 1131 (9th Cir. 2021) and *In Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), *abrogated on other grounds as recognized by*, *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 911–12 (9th Cir. 2004).

For context, *Chacon* is the only other circuit-level opinion to address the question of whether a § 922(a)(1)(A) conviction qualifies as an "aggravated felony."  988 F.3d at 1132.  In finding that the answer is "yes," the Ninth Circuit relies on *Matter of Davis*.  *See id.* at 1133–34.  In *Matter of Davis*, the BIA analyzes a different generic aggravated felony (namely, "illicit trafficking in any controlled substance," 8 U.S.C. § 1101(a)(43)(B)), but, relevant here, the opinion concludes that "illicit trafficking" means "unlawful trading or dealing."  20 I&N Dec. at 541 ("[W]e conclude that a drug-related aggravated felony includes any state, federal, or qualified foreign felony conviction involving the unlawful trading or dealing of any controlled substance[.]").

Ultimately, we find that we need not decide whether the BIA's interpretation is entitled to *Skidmore* deference because we adopt the "unlawful trading or dealing in firearms" definition as our own.  In other words, we adopt this definition because it is the

---

[4] The parties agree that agencies are no longer entitled to *Chevron* deference.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411–12 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

correct one, not because it is owed deference.  We outline the merits of this definition in the next section when considering Alvarez Ronquillo's remaining arguments.

ii.

Alvarez Ronquillo next claims that the government's definition disregards the key qualifier that is "illicit trafficking *in firearms*."  Put differently, he argues that the meaning of "illicit trafficking" varies based on the type of object being trafficked, and the government fails to account for this.

In making this argument, Alvarez Ronquillo concedes that the government's interpretation aligns with dictionary definitions of both "illicit" and "trafficking" at the time of the aggravated felony statute's enactment.  Likewise, he concedes that "searching for the plain meaning of a statute's text often starts with reading dictionaries published close in time to when it was enacted."  *Lovo v. Miller*, 107 F.4th 199, 207 (4th Cir. 2024) (quoting *Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 129 (4th Cir. 2023)); *see also Abdelshafi*, 592 F.3d at 607 ("A statute's plain meaning is determined by reference to its words' 'ordinary meaning at the time of the statute's enactment.'" (quoting *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001))); *George*, 946 F.3d at 646 ("To glean a word's ordinary meaning, courts often look to dictionaries[.]").

Both concessions are sound.  Congress codified "illicit trafficking in firearms" as an aggravated felony in 1988.  *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469–70 ("'aggravated felony' means … any illicit trafficking in any firearms").  It later modified the statute to its current language in 1994.  *See* Immigration

7

and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222, 108 Stat. 4305, 4320–21 ("'aggravated felony' means … illicit trafficking in firearms").

Dictionaries published around this time support defining "illicit trafficking" as "unlawful trading or dealing." *See, e.g.*, *Illicit*, Black's Law Dictionary (6th ed. 1990) ("Not permitted or allowed; prohibited; unlawful; as an illicit trade; illicit intercourse."); *Trafficking*, Black's Law Dictionary (6th ed. 1990) ("Trading or dealing in certain goods and commonly used in connection with illegal narcotic sales."). The same holds true for today's dictionaries. *See, e.g.*, *Illicit*, Black's Law Dictionary (12th ed. 2024) ("Illegal or improper."); *Trafficking*, Black's Law Dictionary (12th ed. 2024) ("The act of transporting, trading, or dealing, esp. in illegal goods or people.").

Alvarez Ronquillo counters that these concessions are not meaningful, however, because "illicit trafficking" alone "does not sufficiently address the nuanced differences between the trafficking of different objects." Opening Br. 21. He centers this argument on the idea that dictionary definitions of "trafficking" focus on the trafficking of "commodities that inherently reflect some element of criminality," e.g., illegal goods. *Id.* at 19. This is a problem, he argues, because firearms are not inherently criminal.

We reject this argument. As an initial matter, dictionary definitions expressly acknowledge that "trafficking" can involve, but does not always involve, illegal goods. *See, e.g.*, *Trafficking*, Black's Law Dictionary (12th ed. 2024) ("The act of transporting, trading, or dealing, *esp. in illegal goods or people*.") (emphasis added); *Trafficking*, Black's Law Dictionary (6th ed. 1990) ("Trading or dealing in certain goods and *commonly used in connection with illegal narcotic sales*.") (emphasis added).

8

This approach makes sense. After all, the trafficking of many objects, even those commonly associated with crime, is rarely *inherently* criminal—hence, the need for the qualifier "illicit." Controlled substances, for example, can be sold by both dealers in alleys and pharmacists in grocery stores.

Relatedly, it is a "normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). The INA uses "illicit trafficking" in association with two different objects: controlled substances and firearms. *See* 8 U.S.C. §§ 1101(a)(43)(B)–(C). Alvarez Ronquillo's unsubstantiated claim about the "inherent criminality" of some objects is not enough for us to disregard this rule and apply various meanings to "illicit trafficking."

Despite this internal INA guidance, Alvarez Ronquillo ultimately asks us to consult outside sources to uniquely define "illicit trafficking *in firearms*." He highlights two sources in particular: (1) Section 2K2.1(b)(5) of the U.S. Sentencing Guidelines, especially its 2006 commentary; and (2) the Stop Illegal Trafficking in Firearms Act, Pub. L. 117–159, § 12004, 136 Stat. 1313, 1327 (2022). His overall claim is that these sources "demonstrate" that "illicit trafficking *in firearms*" means the "deliberate transfer of firearms for unlawful use." *See* Opening Br. 22–23, 27.

Alvarez Ronquillo is correct that outside sources like a "closely related federal statute" can offer "further evidence" of the meaning of a "generic federal definition." *See Esquivel-Quintana*, 581 U.S. at 394. But we are unconvinced that our reading of an immigration statute from 1988 should be controlled by sentencing guidance from 2006 or

9

a separate statutory scheme from 2022. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 & n.9 (2004) (finding that one INA provision enacted "just nine months earlier" "strongly supports" the Court's interpretation of a second INA provision).

Our skepticism is only emphasized by the fact that neither source is referenced in the aggravated felony statute. "[M]any … aggravated felonies in the INA," including this one, "are defined by cross-reference to other provisions of the United States Code." *Esquivel-Quintana*, 581 U.S. at 395; *see* 8 U.S.C. § 1101(a)(43)(C) (cross-referencing 18 U.S.C. § 921(a)(3) and § 841(c)). Therefore, "if Congress wanted to" meaningfully relate these authorities, it "knew how to do so." *Pugin v. Garland*, 599 U.S. 600, 608 (2023).

Ultimately, without any real evidence that these (or other) sources should define this aggravated felony, we rely on the "[s]urrounding provisions of the INA [to] guide our interpretation." *Esquivel-Quintana*, 581 U.S. at 394. As outlined, the INA expressly provides that "illicit trafficking" can and should be used to define the "trafficking" of different objects. *Compare* 8 U.S.C. § 1101(a)(43)(B), *with id.* § 1101(a)(43)(C).

iii.

In sum, we reject Alvarez Ronquillo's arguments and agree with the government that the plain meaning of "illicit trafficking in firearms" is "unlawful trading or dealing in firearms." Because we are not confronted with "ambiguity or a clearly expressed

10

legislative intent to the contrary," we give this generic aggravated felony statute its plain meaning. *See George*, 946 F.3d at 645 (quoting *Abdelshafi*, 592 F.3d at 607).[5]

B.

With the meaning of our aggravated felony statute in place, we now compare this generic offense to Alvarez Ronquillo's statute of conviction to determine if there is a categorical match. We conclude that there is.

Again, the statute of conviction states: "It shall be unlawful for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." 18 U.S.C. § 922(a)(1)(A). Surrounding provisions also provide that "engaged in the business" means:

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms … [or] a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms.

*Id.* §§ 921(a)(21)(C)–(D).

---

[5] We also disregard Alvarez Ronquillo's arguments about legislative history. *See Ctr. for Env't Health v. Regan*, 103 F.4th 1027, 1038 n.12 (4th Cir. 2024) ("[L]egislative history is irrelevant to the interpretation of an unambiguous statute." (quoting *In re Moore*, 907 F.2d 1476, 1478–79 (4th Cir. 1990)).

11

As the Third Circuit explains, this language creates a "regulatory/licensing offense." *Mayorga v. Att'y Gen.*, 757 F.3d 126, 133 (3d Cir. 2014). Nothing indicates to us that "unlawful trading or dealing in firearms" fails to cover this licensing offense. In fact, we agree with the Ninth Circuit that "[s]omeone engaged in the business of manufacturing, dealing, or importing firearms without a license … is necessarily engaged in the unlawful trading or dealing in firearms." *Chacon*, 988 F.3d at 1135.[6]

Alvarez Ronquillo implicitly concedes this overlap. He argues that, if we adopt the government's interpretation, it is only an exception to § 922(a)(1)(A) that makes the statute broader. This exception, dubbed the "proof of profit" exception, falls under § 921(a)(22). It holds: the statute's intent-to-profit requirement "shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism." According to Alvarez Ronquillo, per this exception, a firearm dealer can be convicted under § 922(a)(1)(A) without receiving consideration, and "trading or dealing in firearms" "requires the exchange of consideration." *See* Opening Br. 39.

We reject this argument. Even assuming that: (1) "trading or dealing in firearms" requires an exchange of consideration; and (2) a dealer does not receive consideration when they provide firearms "for criminal purposes or terrorism," consideration remains at play. To fall under the "proof of profit" exception, one must still "engage[] in the regular and repetitive purchase *and* disposition of firearms." 18 U.S.C. § 921(a)(22) (emphasis added).

---

[6] Like with the aggravated felony statute, we find § 922(a)(1)(A)'s plain language unambiguous and do not consider Alvarez Ronquillo's arguments about legislative history. *See supra* Note 5.

12

As a result, a dealer must first complete "purchases" that almost certainly involve a traditional form of consideration. Nothing in the text of § 921(a)(22) instructs us to disregard these purchases. In fact, the exception instructs us to consider them.

We therefore disagree that the "proof of profit" exception makes § 922(a)(1)(A) a broader offense than "unlawful trading or dealing in firearms." We instead find that the two offenses are a categorical match. Because the offenses are a categorical match, we agree with the BIA that Alvarez Ronquillo committed an aggravated felony—specifically, the generic aggravated felony of "illicit trafficking in firearms." 8 U.S.C. §1101(a)(43)(C).

### III.

Based on the foregoing, we deny the petition to review the BIA's order.

*DENIED.*

13