**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 24-1553**

—————————

VAUGHN ANDRE GARDNER,

          Petitioner,

    v.

TODD BLANCHE, Acting Attorney General,

          Respondent.

—————————

On Petition for Review of an Order of the Board of Immigration Appeals.

—————————

Argued:  March 18, 2026                     Decided:  April 14, 2026

—————————

Before THACKER, RUSHING, and BENJAMIN, Circuit Judges.

—————————

Petition for review denied by published opinion.  Judge Thacker wrote the opinion, in which Judge Rushing and Judge Benjamin joined.

—————————

**ARGUED:**  Carnell T. Johnson, JOHNSON & NICHOLSON, PLLC, Charlotte, North Carolina, for Petitioner.  Rodolfo David Saenz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Lindsay B. Glauner, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————————

THACKER, Circuit Judge:

Vaughn Andre Gardner ("Petitioner"), a native and citizen of Jamaica, applied for cancellation of removal after he was placed in removal proceedings. An Immigration Judge ("IJ") determined Petitioner was ineligible for cancellation of removal because he had two prior convictions for crimes involving moral turpitude ("CIMT"). Petitioner argued that he was eligible because one of those cases -- a 2009 larceny charge -- did not result in a conviction. The IJ disagreed and denied Petitioner's application, and the Board of Immigration Appeals ("BIA") affirmed.

Petitioner now seeks review of that decision. Because we conclude that the 2009 larceny charge did result in a conviction as that term is defined in 8 U.S.C. § 1101(a)(48)(A), we deny the petition.

I.

Petitioner entered the United States in 1992 at the age of three with a B-1/B-2 visitor visa, which he overstayed. Petitioner was initially placed in removal proceedings in 2010 and applied for cancellation of removal. But the case was not adjudicated because it was administratively closed upon a motion from the parties in 2012. The Department of Homeland Security ("DHS") moved to reopen the case in 2018. The motion was granted, and Petitioner renewed his application for cancellation of removal.

DHS then requested that the IJ deny Petitioner's application for cancellation of removal without a hearing, arguing that Petitioner was ineligible for cancellation of removal because he had two prior CIMT convictions. In support of its position, DHS pointed to Petitioner's 2009 guilty plea to misdemeanor larceny and his 2013 conviction

2

for a separate misdemeanor larceny, both in North Carolina. Petitioner conceded that the 2013 conviction qualified as a CIMT, but he argued that the 2009 larceny did not result in a "conviction" for immigration purposes. Instead, the 2009 larceny charge resulted in what North Carolina calls a "Prayer for Judgment Continued" ("PJC"), which is a type of deferred resolution not resulting in a formal conviction.

The IJ concluded that the 2009 PJC did qualify as a conviction pursuant to the relevant statute because the state court imposed punishment when it entered the PJC. Specifically, the state court resolved the charge by entering a PJC "upon comp[letion] of [community service work]," J.A. 145,[1] and the IJ determined that the community service requirement amounted to punishment.[2] Thus, the IJ found that Petitioner had two CIMT convictions, rendering him ineligible for cancellation of removal. Petitioner appealed to the BIA. Employing the same reasoning as the IJ, the BIA denied the petition in its own opinion. Petitioner timely filed this petition for review.

## II.

"When, as here, the BIA affirms the IJ's decision with an opinion of its own, we review both decisions." *Garcia Hernandez v. Garland*, 27 F.4th 263, 266 n.* (4th Cir. 2022) (quoting *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018)). Because cancellation of removal is a discretionary form of relief, the factual findings or

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] The document text reads, "PRAYER FOR JUDGMT CONT UPON COMP OF CSW." J.A. 145. But there is no dispute that "CSW" stands for "community service work."

3

discretionary determinations of the BIA are not subject to review. 8 U.S.C. § 1252(a)(2)(B); *Patel v. Garland*, 142 S. Ct. 1614, 1618 (2022). Nevertheless, we retain jurisdiction to review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); see *Patel*, 596 U.S. at 336–47. We review questions of law de novo. 8 U.S.C. § 1252(a)(2)(D); *Garcia Hernandez*, 27 F.4th at 268.

### III.

### A.

In North Carolina, "after a conviction or plea (guilty or nolo contendere) the court has power: (1) to pronounce judgment and place it into immediate execution; (2) to pronounce judgment and suspend or stay its execution; (3) to continue prayer for judgment." *State v. Griffin*, 100 S.E.2d 49, 50 (N.C. 1957). A court "may continue the prayer for judgment" for minor offenses if it "finds it desirable not to pass judgment immediately" and "if no terms or conditions are imposed." *Id.* at 51. As we have explained, "'[w]hen the prayer for judgment is continued there is no judgment—only a motion or prayer by the prosecuting officer for judgment.' Absent a final judgment, there can be no sentence." *Gonzalez v. Sessions*, 894 F.3d 131, 142 (4th Cir. 2018) (quoting *Griffin*, 100 S.E.2d at 51). But "when the court enters an order continuing the prayer for judgment and at the same time *imposes conditions amounting to punishment (fine or imprisonment)* the order is in the nature of a final judgment," with an attendant sentence, "from which the defendant may appeal." *Id.* (emphasis in original).

4

In the federal immigration context:

> The term "conviction" means, with respect to [a noncitizen], a formal judgment of guilt of the [noncitizen] entered by a court or, if adjudication of guilt has been withheld, where--
>
> (i) a judge or jury has found the [noncitizen] guilty or the [noncitizen] has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the [noncitizen's] liberty to be imposed.

8 U.S.C. § 1101 (a)(48)(A).

### B.

As explained above, the North Carolina court issued the PJC in Petitioner's 2009 case "upon comp[letion] of [community service work]." J.A. 145. There is no dispute that a PJC qualifies as a circumstance where an "adjudication of guilt [is] withheld." 8 U.S.C. § 1101(a)(48)(A). So, if Petitioner's 2009 PJC is to qualify as a conviction, there must have been a sufficient finding or admission of guilt, and some form of punishment must have been imposed. *See id.* Petitioner does not dispute that he pled guilty to misdemeanor larceny, so the first requirement is satisfied. Thus, the only dispute is whether the state court "ordered some form of punishment, penalty, or restraint on [Petitioner's] liberty" when it conditioned the PJC upon completion of community service.[3] *Id.*

---

[3] Petitioner does not dispute that misdemeanor larceny is a CIMT, or that he is ineligible for cancellation of removal if his 2009 PJC is a conviction.

5

We considered a similar question in *Gonzales*, where the North Carolina court issued a PJC but required the defendant to pay $100 in court costs. *Gonzalez*, 894 F.3d at 135. The question there was whether the assessment of costs qualified as "punishment" pursuant to § 1101. We first considered the definitions of "punishment" and "penalty" and determined that those terms "require[] a judge to order a *punitive* sanction—i.e., one that is intended to discipline or deter and is proportionate to the underlying offense conduct." *Id.* at 140. Turning to the court cost requirement, we concluded that it was not punishment because in North Carolina court "costs are not punitive in nature." *Gonzalez*, 894 F.3d at 141. We explained, such "[c]osts cannot be imposed on mere equitable or moral grounds—i.e., as a discretionary judicial act—but instead are imposed as a ministerial act, pursuant to statute." *Id.* at 141–42 (cleaned up).

But we further explained that where "discretionary costs and surcharges [are] at issue[,]" their imposition would be "punitive in character." *Id.* at 143 (discussing the Florida discretionary assessments at issue in *Matter of Cabrera*, 24 I. & N. Dec. 459 (2008)). In other words, the decision in *Gonzalez* drew a distinction between court imposed, administrative or compensatory orders intended to "reimburse a state . . . regulatory body for expenses incurred," and judgments, imposed at a judge's discretion, that are intended to deter future wrongdoing and are commensurate with the crime's reprehensibility. *Id.* at 139–40.[4]

---

[4] This understanding of "punishment" and "penalty" accords with North Carolina's jurisprudence as to what types of conditions act as punishment and transform a PJC into a final order. *See State v. Popp*, 676 S.E.2d 613, 615 (N.C. App. 2009) ("Conditions (Continued)

6

Applying that distinction in this case, we have no trouble concluding that Petitioner's 2009 PJC qualifies as a conviction. Here, the court ordered that the PJC was to issue upon completion of community service. That requirement is punitive in nature rather than administrative. Although we have not had occasion to consider whether a community service requirement qualifies as punishment, the BIA, Eighth Circuit, and Fifth Circuit have, and have all agreed that community service qualifies as punishment for purposes of § 1101(a)(48)(A). *See Mendoza-Saenz v. Sessions*, 861 F.3d 720, 724 (8th Cir. 2017) (concluding that "[petitioner's] probation, community service, and fines," as part of participation in and obligations under a judge-ordered diversion program, "constitute[d] court-imposed penalties"); *Mireles-Ontiveros v. Holder*, 376 F. App'x 416, 416 (5th Cir. 2010) (concluding that because the court required petitioner to, among other things, "perform 200 hours of community service and attend anger management classes, the deferred adjudication constituted a conviction for immigration purposes"); *Matter of Mohamed*, 27 I. & N. Dec. 92, 97–98 (2017) (finding that "the imposition of periods of community supervision and community service, the community supervision and pretrial intervention program fees, the order of restitution, and the no-contact order" "individually and cumulatively constitute a "form of punishment"). We agree.

Petitioner offers several arguments in an attempt to avoid this conclusion. First, Petitioner argues that "[t]he requirement of an indeterminate, unenforceable, and

'amounting to punishment' include fines and imprisonment. Conditions not 'amounting to punishment' include 'requirements to obey the law,' and a requirement to pay the costs of court." (citations omitted)).

7

unsupervised [term of] community service did not flow from his culpability but rather was a way for Petitioner to earn the PJC." Opening Br. at 9. In Petitioner's view, he "was not placed on a probationary sentence nor did the judge retain jurisdiction over the matter while community service was performed." *Id.* Instead, Petitioner claims he "completed the community service *before* entering his admission of guilt and having his final judgment indefinitely suspended." *Id.* at 10. But those arguments lack any citation to authority and find no support in the record. In fact, the only record evidence is the single line in the document detailing the resolution of the 2009 charge, which notes that the PJC was to issue upon completion of community service.

Importantly, at oral argument, Petitioner's counsel conceded that when a defendant performs community service in order to "earn" a PJC, such community service is directed and controlled by the North Carolina court. As counsel explained, "[a] PJC is a benefit" a defendant can earn. Oral Argument at 12:03, *Gardner v. Bondi*, No. 24-1553 (4th Cir. Mar. 18, 2026), https://www.ca4.uscourts.gov/oral-argument/oral-argument-audio-files ("Oral Argument"). "When we say 'earning' . . . [it] is because one is trying to earn that benefit, not so much be punished or deterred from doing it again." *Id.* at 12:03–26. Counsel elaborated, "if you want a PJC, you show [the court] that you complied with community service." *Id.* at 12:50–55. In other words, as counsel further explained, when a defendant "request[s] [that] the court enter a PJC, . . . "the court say[s] 'upon us using our discretion you *must* do this [community service], and *if* you show us you did these things, we will *then* use our discretion to enter a PJC.'" *Id.* at 24:56–25:12 (emphases supplied). "In this case, your honor, my client made a request to the court for a PJC. The

8

court said 'okay, we will consider entering a PJC upon showing that you've completed community service hours.'" *Id.* at 25:24–34.

Based upon this explanation of counsel, we sought to clarify:

> The Court: On the community service, is there a certain number of hours that the court suggests that [a defendant] do and . . . where he is to do community service?
>
> Counsel: Yes Judge, it's up to the discretion of the courts and it varies. Some judges may have [a defendant] do it at a local nonprofit, some judges will have [them] do it at a certified nonprofit that works with the courts.
>
> The Court: But the court decides where community service is done and how many hours of community service?
>
> Counsel: Correct.

Oral Argument at 27:05–34.

By conditioning the PJC on the completion of community service as required by the court, the court imposes a restraint upon the defendant's liberty and imposes punishment. It makes no difference whether the required community service takes place before or after the PJC issues. What matters is that it is discretionary, is required by the court, and is neither an administrative nor compensatory order intended to "reimburse a state . . . regulatory body for expenses incurred." *Gonzalez*, 894 F.3d at 139–40.

Next, Petitioner argues that the community service here was not a punishment as we defined the term in *Gonzalez* because it "had no relation to the offense, a larceny, nor to the victim of the crime, so [it] did not flow from the underlying conduct." Opening Br. at 9. But community service is surely a punitive sanction. It is discretionary and does not serve any administrative purpose. Instead, community service is "intended to discipline or

9

deter and is proportionate to the underlying offense" -- here, misdemeanor petty larceny. *Gonzalez*, 894 F.3d at 140.

Finally, Petitioner argues that community service is not a punishment in this context because it is not the type of condition that North Carolina's high courts would find to have converted the PJC to a final appealable order. As explained above, a PJC is generally not a final appealable order because there has been no judgment. *Griffin*, 100 S.E.2d at 51. However, "when the court enters an order continuing the prayer for judgment and at the same time imposes conditions amounting to punishment (fine or imprisonment) the order is in the nature of a final judgment, from which the defendant may appeal." *Id.* That is the case here.

Petitioner's argument fails on the merits because community service is exactly the type of condition that would convert the PJC to a final judgment under North Carolina law. Much like in *Gonzalez*, North Carolina courts recognize that conditions that go "beyond a requirement to obey the law" or a requirement to pay mandatory court costs "amount[] to punishment." *State v. Popp*, 676 S.E.2d 613, 614–15 (N.C. App. 2009) (finding that an order to abide by a curfew, complete high school, enroll in higher education or the military, cooperate with drug screening, and complete 100 hours of community service was punishment); *see also State v. Brown*, 430 S.E.2d 433, 434 (N.C. App. 1993) (concluding that an order to continue psychiatric treatment was punishment); *Griffin*, 100 S.E.2d at 51 (holding that a court had imposed final judgment and punishment where it ordered a defendant to pay a fine and despite its decree that "the prayer be continued"); *see also State v. Cheek*, 229 S.E.2d 227, 228 (N.C. App. 1976) (concluding that an order to not flee from

10

prison and obey the law was not "punishment"). Community service goes beyond a requirement to simply follow the law.

But more importantly, whether the PJC was converted to a final judgment under North Carolina law is irrelevant to whether the PJC included a "punishment" rendering it a "conviction" for purposes of federal immigration law. This is so because § 1101(a)(48)(A) does not require a final judgment but instead accounts for deferred adjudications like PJCs. And as we have explained, a punishment in this context is a punitive sanction "intended to discipline or deter and is proportionate to the underlying offense." *Gonzalez*, 894 F.3d at 140.

The record evidence here demonstrates that the North Carolina court entered the PJC upon completion of community service. We find that order to be punitive, such that it constitutes punishment. Therefore, we hold that Petitioner's 2009 PJC is a conviction for purposes of § 1101(a)(48)(A).

## IV.

The Petition for Review is

*DENIED*.

11